**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eric CHEN, Defendant–Appellant.**

**No. 90–10434.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1991.

Decided May 23, 1991.

As Amended July 5, 1991.

Howard Trapp, Agana, Guam, and David B. Parker, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for defendant-appellant.

Karon V. Johnson, Asst. U.S. Atty., Agana, Guam, for plaintiff-appellee.

Before GOODWIN, THOMPSON and O'SCANNLAIN, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Eric Chen appeals his conviction for giving false testimony before a grand jury in violation of 18 U.S.C. § 1623. He contends that the district court committed reversible error when it refused to give the jury his requested instruction on bad memory, and that his perjury indictment should be dismissed under the "perjury trap" doctrine. We affirm.

## FACTS

Beginning in 1985, the FBI and the Department of the Interior began a joint investigation into possible corruption within the Public Utility Agency of Guam ("PUAG"). In 1986, a Department of the Interior investigator interviewed David Crisostomo, a PUAG employee. Crisostomo revealed that he and Gregorio Roberto Taitague, another PUAG employee, had received kickbacks totaling $1,200 from Chen back in 1981. Taitague substantially confirmed Crisostomo's statements. Taitague

also stated that he could recall receiving two other kickbacks from Chen—$20 in exchange for a mechanical shoe purchase order and $40 for an electrical pump purchase order. Taitague later pleaded guilty to bribery and wire fraud counts. Crisostomo, who had been accepting bribes from other contractors, ultimately pleaded guilty to two counts of bribery.

In April 1989, the FBI and the Department of the Interior interviewed Chen regarding his business dealings with PUAG. By this time, the statute of limitations had run on Chen's alleged bribery of Crisostomo and Taitague in 1981. Chen was not informed of Crisostomo's and Taitague's statements, and he explicitly denied ever making a kickback payment to any PUAG employee.

Chen later became one of fourteen major PUAG vendors subpoenaed to testify before the grand jury regarding kickbacks and payoffs to PUAG officials by private contractors. In his grand jury testimony, Chen categorically denied making any payoffs to Crisostomo, Taitague, or any other PUAG employee.[1]

Federal investigators again met with Chen. They told him they had information that directly contradicted his grand jury testimony. They suggested that if Chen cooperated in the ongoing PUAG investigation he would not be indicted. Chen declined to cooperate. Thereafter, he was indicted for perjury in violation of 18 U.S.C. § 1623. He was charged with giving false testimony before the grand jury when he testified that "he had never given ... Taitague any cash or property or gifts."

At trial, Chen did not testify. His theory of defense was that he did not knowingly make a false statement before the grand jury. He requested a jury instruction which included "bad memory" as an explanation for false testimony. The court refused this instruction. Instead, it gave the jury a general instruction on the element of knowledge.

Chen was convicted and sentenced to ten months imprisonment, two years supervised release, a $3,000 fine, and a $50 special assessment.

## DISCUSSION

### A. The Bad Memory Instruction

Chen contends that the district court erred in refusing to give his proposed jury instruction regarding failure to remember in connection with the knowing falsity element of perjury. Specifically, Chen requested the following instruction:

The requirement that you find the defendant acted knowingly means that you may not find the defendant guilty of making a false declaration simply because the defendant gave testimony which is factually incorrect. The defendant may have given incorrect testimony because of an honest mistake of facts, confusion, haste, oversight, or carelessness. If the defendant made an erroneous and incorrect statement due to a slip of the tongue or bad memory or through misunderstanding, the defendant would not be guilty of making the false statement knowingly.

The district court declined to give this instruction and instead gave the following general instruction on the element of knowledge:

If you decide the answer the defendant gave was false, you must then decide whether the defendant gave that answer knowingly, that is, at the time the an-

---

1. Chen's testimony before the grand jury included the following exchanges:

 Q: Have you ever paid anyone at PUAG any kickbacks, paid them any cash or given them any property?
 A: No.
 Q: Did you ever give any gifts or money to Mr. Taitague?
 A: No, no.
 Q: You, did you ever give Mr. Taitague any cash or any property or any gifts?
 A: No, never.
 Q: So your testimony here today under oath is that you've never given any cash, kickbacks, property, gifts or loans to any Government of Guam officials?
 A: No, unless there's sometime we buy some ticket, you know. They got some fundraising ticket, you know.

swer was given, did the defendant know and believe that the answer was false. Unless you find beyond a reasonable doubt that the defendant knew his answer was false, you may not find the defendant guilty.

It is well-established that a criminal defendant is entitled to have a jury instruction on any legal defense to the charge against him which has some foundation in the evidence. *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir.1990); *United States v. Lopez*, 885 F.2d 1428, 1434 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990); *United States v. Yarbrough*, 852 F.2d 1522, 1541–42 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988).

Here, Chen's defense theory was that he could not be convicted of giving false testimony to the grand jury because he did not knowingly make any false statement. He argues the lapse of eight years between the questioned events back in 1981 and his testimony before the grand jury supports his request for the bad memory instruction.

We may assume Chen is correct in arguing that there is some evidence to support his request for a bad memory instruction. We may also assume, for purposes of this discussion only, that his requested instruction was a correct statement of the law. Nevertheless, if the instructions given by the court in their entirety adequately covered Chen's defense theory of the case, the district court did not err in refusing to give Chen's instruction. *Mason*, 902 F.2d at 1438; *Lopez*, 885 F.2d at 1439.

"So long as the instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion." *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir.1985) (citing *United States v. Abushi*, 682 F.2d 1289, 1299 (9th Cir.1982)); *United States v. James*, 576 F.2d 223, 226 (9th Cir.1978) (district court "given substantial latitude in tailoring instructions so long as they fairly and adequately cover the issues presented"). "[I]n reviewing the instructions as a whole, we must consider how they will reasonably be understood by the jury in the context of the whole trial." *Mason*, 902 F.2d at 1441 (citing *Stoker v. United States*, 587 F.2d 438, 440 (9th Cir.1978)).

Viewing the instructions as a whole, it is apparent that the defense theory was adequately covered by the instructions given. Although the district court did not define the term "knowingly" as requested by Chen, the jury nevertheless was instructed that the government had to prove that Chen "answer[ed] knowingly, that is, at the time the answer was given ... [he knew] and believed the answer was false."

The instructions as given did not explicitly use the term "bad memory" or the word "forgot," but this is not determinative. "[N]either party, including a criminal defendant, may insist upon any particular [instructional] language." *James*, 576 F.2d at 226 (citing *United States v. Pallan*, 571 F.2d 497 (9th Cir.), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978)). It is enough that the charge given by the district court, if followed by the jury, was sufficient to preclude a conviction if the jury believed that Chen had forgotten about the kickbacks. *Cf. United States v. Dorotich*, 900 F.2d 192, 194 (9th Cir.1990) (defendant not entitled to separate good faith instruction when trial court gives adequate instruction on specific intent); *United States v. Solomon*, 825 F.2d 1292, 1297 (9th Cir.1987) (same), *cert. denied*, 484 U.S. 1046, 108 S.Ct. 782, 98 L.Ed.2d 868 (1988)).

B. The "Perjury Trap"

■ Chen contends the government set out to ensnare him in a "perjury trap." A perjury trap is created when the government calls a witness before the grand jury for the primary purpose of obtaining testimony from him in order to prosecute him later for perjury. *United States v. Simone*, 627 F.Supp. 1264, 1268 (D.N.J.1986) (perjury trap involves "the deliberate use of a judicial proceeding to secure perjured testimony, a concept in itself abhorrent"). It involves the government's use of its investigatory powers to secure a perjury indictment on matters which are neither material nor germane to a legitimate ongoing investigation of the grand jury. *See United States v. Crisconi*, 520 F.Supp. 915, 920

(D.Del.1981). Such governmental conduct might violate a defendant's fifth amendment right to due process, *Simone*, 627 F.Supp. at 1267–72, or be an abuse of grand jury proceedings, *Crisconi*, 520 F.Supp. at 920. *See generally* Gershman, *The "Perjury Trap"*, 129 U.Pa.L.Rev. 624, 683 (1981).

■ The Ninth Circuit has not yet recognized the perjury trap doctrine. *See United States v. Taylor*, 881 F.2d 840, 841 (9th Cir.1989); *United States v. Howard*, 867 F.2d 548, 549–50 (9th Cir.1989); *but cf. Bursey v. United States*, 466 F.2d 1059, 1080 n. 10 (9th Cir.1972) ("If a court divines that the purpose of repetitious questioning is to coax a witness into the commission of perjury ... such conduct would be an abuse of the grand jury process"). We need not decide in this case whether to embrace the perjury trap doctrine. Here, the facts render the perjury trap defense inapplicable in any event.

When testimony is elicited before a grand jury that is "attempting to obtain useful information in furtherance of its investigation", *United States v. Devitt*, 499 F.2d 135, 140 (7th Cir.1974), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975), or "conducting a legitimate investigation into crimes which had in fact taken place within its jurisdiction", *United States v. Chevoor*, 526 F.2d 178, 185 (1st Cir.1975), *cert. denied*, 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976), the perjury trap doctrine is, by definition, inapplicable.

The questions asked of Chen when he testified before the grand jury were relevant to the grand jury's investigation. That investigation was much broader than a simple examination of Chen's 1981 dealings with Crisostomo and Taitague. The investigation concerned payoffs to employees of PUAG over the last ten years. As a contractor who had done a substantial volume of business with PUAG for years, and who was still doing business with it at the time of the grand jury proceeding, Chen was a person who likely would have knowledge of whether kickbacks had been paid to any PUAG employees in the past or were still being paid. Additionally, an inference could be drawn from other evidence that Chen's payment of kickbacks might possibly go beyond those paid to Taitague and Crisostomo. This evidence was supplied by a cooperating vendor who had informed the government that Chen's company would consistently receive PUAG purchase orders even though his company's submitted bids were not the lowest.

The fact that the statute of limitations had run on the alleged 1981 bribery does not preclude Chen's perjury prosecution, because it does not render his grand jury testimony any less material to the grand jury's investigation into ongoing criminal activity within PUAG. It is settled that the running of the statute of limitations on an underlying crime does not have an impact on the materiality of a false declaration in terms of the requirement that the witness make a false *material* declaration in order to be prosecuted. *See United States v. Vap*, 852 F.2d 1249, 1253 (10th Cir.1988) (fact that statute of limitations had run not important when investigation wider than scope of defendant's conduct); *United States v. Reed*, 647 F.2d 849, 853 (8th Cir.1981) (irrelevant that part of testimony concerned matters for which defendant could not personally be prosecuted); *United States v. Nickels*, 502 F.2d 1173, 1176 (7th Cir.1974) (same), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976); *United States v. Cohn*, 452 F.2d 881, 883 (2d Cir.1971), *cert. denied*, 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972) (same).

Here, it is clear that even though the statute of limitations had run with regard to the alleged bribery in 1981, "[t]ruthful answers to those questions might well have served as the foundation for a more 'fruitful investigation' into the broader subject matter of the grand jury's inquiry." *Devitt*, 499 F.2d at 139. Had Chen answered all the questions honestly, the grand jury potentially would have been in a position to ascertain more details about the bribery scandal and to further identify its true parameters.

The fact that, subsequent to Chen's grand jury testimony, the government offered to forego a perjury prosecution in exchange for Chen's cooperation does not render his prosecution impermissible. Such a deal is commonplace and suggests

the government held a sincere belief Chen possessed information material to the ongoing investigation, information which the government was willing to bargain to get.

 Chen also contends that his perjury prosecution was improper because the government anticipated he would commit perjury in testifying before the grand jury because he had lied to the government investigators in the informal interviews. We reject this argument. Here, while the government may have anticipated Chen would give false testimony before the grand jury, it is also apparent the government "recognized that [Chen] ... might provide information about the pending investigation." *Caputo*, 633 F.Supp. 1479, 1487 (E.D.Pa.1986). Indeed, the government had reason to expect that Chen would testify truthfully once placed in the solemn atmosphere of the grand jury room.

> [F]or many witnesses the grand jury room engenders an atmosphere conducive to truthtelling, for it is likely that upon being brought before such a body of neighbors and fellow citizens, and having been placed under a solemn oath to tell the truth, many witnesses feel obliged to do just that.

*United States v. Washington,* 431 U.S. 181, 187–88, 97 S.Ct. 1814, 1818–19, 52 L.Ed.2d 238 (1977).

Accordingly, the government's actions in this case were not "beyond the pale of permissible prosecutorial conduct." *Chevoor,* 526 F.2d at 185.

## CONCLUSION

The district court did not err in rejecting Chen's proffered instruction on bad memory. The instructions, when taken as a whole, adequately covered Chen's defense theory of the case.

Chen was called before the grand jury because it was reasonable to expect that he would provide relevant information with respect to an ongoing, viable investigation. Accordingly, the government did nothing improper in calling Chen to testify.

AFFIRMED.