**UNITED STATES of America**

v.

**Matthew E. McGEE and Robert A. Alessandro.**

**Crim. A. No. 90–10269–Y.**

United States District Court, D. Massachusetts.

June 26, 1992.

Thomas Drechsler, Finneran & Byrne, Dorchester, Mass., and Willie J. Davis, Davis, Robinson & White, Boston, Mass., for defendants.

John Edward Wall, Law Office of John Wall, Boston, Mass.

Brien Thomas O'Connor, U.S. Attorney's Office, Boston, Mass., for the U.S.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

### I. Introduction

Matthew E. McGee ("McGee") and Robert A. Alessandro ("Alessandro") are two of twenty-six defendants charged in a forty-two count indictment.[1] McGee and Alessandro have been charged with substantive offenses involving the possession, importation and distribution of controlled substances and with obstruction of justice.[2]

McGee and Alessandro move to dismiss the indictments, and McGee moves to suppress his grand jury testimony and to disqualify the prosecuting attorney. (Docket Nos. 266–67, filed March 29, 1991; Docket Nos. 330–34, filed May 15, 1991.) The government has filed a consolidated response opposing all the above motions. (Docket No. 379, filed June 5, 1991.) A hearing was held before this Court on October 23, 1991 at which McGee was present and with whose issues Alessandro joins.

### II. Facts

On November 30, 1989, Alessandro appeared before a federal grand jury in Boston. At that time, Assistant United States Attorney Brien T. O'Connor ("O'Connor") advised him that he could no longer assert his Fifth Amendment privilege not to give self-incriminating testimony because he had been granted use and derivative use immunity pursuant to 18 U.S.C. §§ 6002 and 6003 (1988). O'Connor cautioned Alessandro that if he testified falsely in any way, he could be prosecuted for perjury. Alessandro proceeded to deliver sixty-five pages of testimony in response to questions by O'Connor concerning, inter alia, his arrest on May 17, 1986 and his association with others subsequently indicted for conduct which is also the subject of this indictment. According to the government, Alessandro's immunized testimony was later presented to another grand jury which indicted him for the substantive offenses and the obstruction of justice offense.

Similarly, McGee appeared before a federal grand jury in Boston on December 6, 1989. Like Alessandro, McGee was given use and derivative use immunity pursuant to 18 U.S.C. §§ 6002 and 6003. O'Connor cautioned McGee that any false testimony could result in his prosecution for perjury.

---

1. One John Keliher is scheduled to be tried with McGee and Alessandro. The remaining twenty-three defendants have either been found guilty or have pleaded guilty to some or all of the charges against them.

2. Both McGee and Alessandro have been indicted for the following violations: 21 U.S.C. § 846 (1988), Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances (Count 1); 21 U.S.C. § 963 (1988), Conspiracy to Import Controlled Substances (Count 2); 21 U.S.C. § 841(a)(1) (1988), Possession with Intent to Distribute Controlled Substances and 18 U.S.C. § 2 (1988), Aiding and Abetting (Count 23); 21 U.S.C. § 952(a) (1988), Importation of Controlled Substances and 18 U.S.C. § 2 (1988), Aiding and Abetting (Count 24); and 18 U.S.C. § 1503 (1988), Obstruction of Justice (Counts 39 and 40). McGee has also been charged with violating 18 U.S.C. § 1962(c) (1988), Racketeering (Count 4) and 21 U.S.C. § 853 (1988), Criminal Forfeiture (Count 42).

McGee then proceeded to deliver forty-three pages of testimony in response to questions by O'Connor concerning, *inter alia,* his arrest on May 17, 1986 and his association with others subsequently indicted for conduct which is also the subject of this indictment. McGee's immunized testimony was later presented to another grand jury which indicted him for the substantive offenses and the obstruction of justice offense.

### III. *Motions to Dismiss*

#### A. Substantive Counts

█ Alessandro and McGee argue that the indictments should be dismissed because they were obtained by the government's presentation of immunized testimony to the grand jury that indicted them, in direct violation of the immunity statute, 18 U.S.C. § 6002, and their Fifth Amendment rights under the United States Constitution. The government argues that it was not improper to present transcripts of McGee's or Alessandro's immunized testimony to the indicting grand jury and that even if it were, dismissal is an inappropriate remedy since the government can show a wholly independent source for the information.

Analysis must begin with 18 U.S.C. § 6002, the immunity statute. It provides in relevant part:

> [N]o testimony or other information compelled under the order [granting immunity] (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

18 U.S.C. § 6002. In upholding the constitutionality of this statute, the Supreme Court stated that once a defendant shows that he has testified under a grant of immunity to matters relating to the federal prosecution, the government has "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Kastigar v. United States,* 406 U.S. 441, 460, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972). The government's burden of proof in this regard is a "heavy" one.[3] *Id.* at 461, 92 S.Ct. at 1665.

First Circuit cases addressing the government's use of a witnesses' immunized testimony involve claims of derivative or indirect use. *See, e.g., United States v. Romano,* 583 F.2d 1 (1st Cir.1978) (Romano testified before a subcommittee of the U.S. Senate under an order of immunity and was later indicted by a federal grand jury on charges that were the subject of his testimony); *United States v. Serrano,* 870 F.2d 1 (1st Cir.1989) (Serrano testified before a subcommittee of the Puerto Rico House of Representatives under a grant of immunity and was later indicted by a federal grand jury on charges that were the subject of his testimony).

In each of these cases, the First Circuit upheld findings by the district courts that the prosecution had met its "heavy" burden of showing that the evidence used to obtain the indictments was derived from legitimate sources wholly independent of the compelled testimony. *Romano,* 583 F.2d at 7; *Serrano,* 870 F.2d at 15. The First Circuit instructed that "[t]he question of whether any use, derivative or otherwise, was made of the compelled testimony by the prosecution, is one of fact on which, as here, the district court ordinarily holds a separate hearing."[4] *Romano,* 583 F.2d at 7.

---

**3.** The government argues that its burden of proof in this regard is a preponderance of the evidence. (Government's Consolidated Response to Defendant's Substantive Motions at 11 [citing *United States v. Romano,* 583 F.2d 1, 7 (1st Cir.1978)].) However, this Court finds no such definitive statement in *Romano* departing from the general language in *Kastigar. See Romano,* 583 F.2d at 7–8 ("Beyond giving full effect to the substantiality of the Government's

burden, we need not become too enmeshed in fitting it into classic burden-of-proof rubric.... However the formula is stated, we think this record adequately supports the conclusion of the court below [that the government had met its burden].").

**4.** In *Serrano,* a pretrial evidentiary hearing was held at which the government's key witness, an FBI agent, testified that the testimony he gave to

In the instant case, the government concedes that the indictments involve the same subject matter as the immunized testimony of McGee and Alessandro. Therefore, at a minimum it is appropriate for this Court to engage in a *Kastigar* inquiry to determine whether the evidence on which the government relied to obtain the indictment was derived from the immunized testimony. Still more troubling, however, is the fact that in this case the government made a direct presentation of the immunized testimony to the indicting grand jury, not an indirect or derivative use. Other circuits that have addressed this issue have found that, in this situation, something more than a *Kastigar* analysis is required.

In *United States v. Hinton*, 543 F.2d 1002 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976), a witness delivered approximately two hundred pages of compelled immunized testimony to a federal grand jury and was later indicted by the same grand jury on charges concerning the subject of her testimony. *Hinton*, 543 F.2d at 1007. The trial judge ruled, without a hearing, that the government had made no use of the immunized testimony. *Id.* On review, the Second Circuit first determined that the government had not met its burden of proving a wholly independent source for the evidence. *Id.* at 1009. The court ruled that even if the witness' testimony before the grand jury constituted a denial of participation in the alleged acts, it could nevertheless be improperly used since "[a] juror can draw an inference of a witness's guilt from either a confirmation of, or a denial of participation in, acts about which he is questioned." *Id.* Furthermore, the court noted that "[w]here the grand jury which hears the witness's [sic] [immunized] testimony and the grand jury which indicts is the same grand jury, ... consideration of the immunized testimony by that jury is a virtual certainty." *Id.* at 1008 n. 7. The court found particularly unconvincing the government's argument that since the grand jury had heard scores of witnesses in its thirty-one month term, it would have been too costly and time-consuming to convene a new grand jury to indict Hinton. *Id.* at 1009.

The Second Circuit then reasoned that holding an evidentiary hearing to determine whether the grand jurors made improper use of the immunized testimony would be to "invite action where the cure is worse than the malady." *Hinton*, 543 F.2d at 1010. The court explained:

> The prospect of peering into the grand juror's minds, or of examining them individually, to ascertain whether ... [immunized] testimony was improperly used, is both impractical and unpalatable. To so defile the secrecy of the grand jury process is to compound the problem the Government has created, rather than to alleviate it. The alternative of convening a grand jury distinct from that which heard the immunized testimony is not so onerous as to justify the jeopardizing of a defendant's Fifth Amendment rights. To hold otherwise is to permit intrusion into the long-approved common law secrecy of the grand jury process.

*Id.* (footnote omitted). The Second Circuit applied its supervisory powers to fashion a per se rule of dismissal where a defendant is indicted by the same grand jury that heard the immunized testimony. *Id.*

The two other circuits that have considered this issue have declined to go as far as *Hinton* in establishing a rule of per se dismissal when an indictment is obtained from a grand jury which heard immunized testimony. In *United States v. Zielezinski*, 740 F.2d 727 (9th Cir.1984), Zielezinski testified before a federal grand jury about the alleged distribution of cocaine among Phoenix fire fighters. He was later indicted by the same grand jury on seven counts of possession and distribution of cocaine. *Zielezinski*, 740 F.2d at 728. The Ninth Circuit declined to follow the *Hinton* per se rule finding that dismissal was not consti-

---

the grand jury came from his own investigation, not from information he learned by reading the transcript and by viewing on television the highly-publicized immunized testimony. *Serrano*, 870 F.2d at 15. In *Romano*, the district court held a three day hearing prior to trial before determining that the government had not derived its evidence from Romano's immunized testimony. *Romano*, 583 F.2d at 3.

tutionally compelled. *Id.* at 729. Guided by a concern for constitutional protections against prosecutorial conduct that undercuts the independence of the grand jury, however, the Ninth Circuit exercised its supervisory powers to remand the case to the district court for an evidentiary hearing. *Zielezinski*, 740 F.2d at 733. At the hearing, the government was required to establish that the indictment rested on independent sources, otherwise the district court was to dismiss the indictment. *Id.* The court reasoned that requiring the government to prove an independent source in the hearing would both deter governmental misconduct and protect the integrity of the judicial process. *Id.*

In fashioning its rule, the court did not go as far as *Hinton* but it admonished the government practice of seeking an indictment from a grand jury exposed to immunized testimony.

> There is no compelling reason for a prosecutor to ask a grand jury to indict an immunized witness. If a prosecutor thinks such an indictment necessary, he should simply assemble a new, untainted, grand jury, and present the evidence to it. This may involve some extra work or time, but it is effort that must be expended to avoid the appearance of impropriety.

*Id.*

In *United States v. Garrett*, 797 F.2d 656 (8th Cir.1986), Garrett testified before a federal grand jury concerning his relationship with certain individuals under investigation for cocaine trafficking. *Garrett*, 797 F.2d at 658. The same grand jury later indicted Garrett for conspiring to distribute cocaine and for perjury before the grand jury. *Id.* at 659. Prior to trial, Garrett filed a motion to dismiss the indictment but the district court denied it without a hearing. *Id.*

The Eighth Circuit agreed with the Ninth Circuit that the *Hinton* rule was not constitutionally compelled. *Garrett*, 797 F.2d at 663. The court reasoned that, according to *Kastigar*, a person's Fifth Amendment rights are not violated by the mere presentation of immunized testimony to the grand

jury. *Id.* A constitutional violation occurs only when the government fails to prove that the indictment was based on wholly independent evidence. *Id.* As the Eighth Circuit recognized, although *Kastigar* contemplated that the indicting grand jury would be different than the grand jury which heard the testimony, nothing in the opinion suggests that the scope of the self-incrimination provision or the protections of the use immunity statute would change were the compelling and indicting grand juries one and the same. *Id.* "It may prove more difficult to *identify* a constitutional violation where only one grand jury has acted, *see Hinton*, 543 F.2d at 1008–10, but the *inquiry* remains the same." *Garrett*, 797 F.2d at 663.

Following the Ninth Circuit, the Eighth exercised its supervisory powers to require an evidentiary hearing to determine whether a Fifth Amendment violation had occurred. *Id.* at 664. Such an evidentiary hearing, the court concluded, would require the government affirmatively to demonstrate that the indictment rested on wholly independent evidence, and would effectively deter prosecutorial misconduct, avoid the appearance of taint, and protect the integrity of the judicial process. *Id.*

Although *Garrett* held that an evidentiary hearing would in most cases sufficiently safeguard a defendant's rights, it cautioned that "the inquiry into the direct or derivative use of immunized testimony is severely complicated where everything was done before one grand jury." *Id.*

> In some cases, ... [moreover], perhaps because of the length of the immunized testimony or the nature of the disclosures, even if facially exculpatory, or the manner in which the witness denies the charges, it may be impossible for the prosecution to meet its 'heavy burden' of proving a wholly independent source.

*Id.* at 663–64. As an example, the court cited *Hinton* where over two-hundred pages of live testimony was presented to the grand jury after another witness had testified, indicating the government's feeling that Hinton's testimony was needed. *Id.* at 664.

The government argues that surely the *Hinton* rule does not apply to the facts of this case because the immunized testimony was presented to the indicting grand jury in the form of a transcript rather than in the form of live testimony. The Second Circuit, however, did not limit *Hinton* to live testimony and this Court considers the distinction unpersuasive. *See United States v. Rivieccio*, 919 F.2d 812, 816 n. 4 (2d Cir.1990) ("[W]hen the defendant testifies under immunity before the same grand jury returning the indictment or when the immunized testimony is placed before the indicting grand jury.... the indictment must be dismissed."), *cert. denied*, — U.S. —, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991); *but see United States v. Pisani*, 590 F.Supp. 1326, 1344 n. 17 (S.D.N.Y.1984) (When live testimony is presented to the indicting grand jury, the *Hinton* per se rule applies. When transcripts are presented to the indicting grand jury, an evidentiary hearing is required, although the prosecutor's burden is heavy.).

Here, the government's justification for presenting immunized testimony to the indicting grand jury is as follows.

> If the government had sought a separate indictment of defendants on substantive drug charges from a different grand jury, it would have been required to duplicate the presentation of much of the evidence it will introduce in this case at a separate trial. To prove the obstruction charge, the government will be required to present the evidence of defendants' participation in the drug conspiracy. Therefore, if it had presented that charge to a separate grand jury, that too would have been inefficient and wasteful of resources.

Government's Consolidated Response to Defendant's Substantive Motions at 12. This Court agrees with the Second Circuit that "convening a grand jury distinct from that which heard the immunized testimony is not so onerous as to justify the jeopardizing of a defendant's Fifth Amendment rights." *Hinton*, 543 F.2d at 1010. Conservation of government resources is an important concern but not one that outweighs the constitutional rights of a criminal defendant. *See, e.g., id.; Zielezinski*, 740 F.2d at 733.

This Court is persuaded that the *Hinton* per se rule is applicable to the circumstances here presented and rules that a defendant who is compelled to give testimony is entitled to that which the immunity statute so clearly grants—indictment by a grand jury free of the taint of that compelled testimony. *See* 18 U.S.C. § 6002.

For thus reason, all counts against McGee and Alessandro are dismissed without prejudice except for the obstruction of justice counts (Counts 39 and 40) which will be addressed below.

### B. Obstruction of Justice Counts

#### 1. Exceptions to 18 U.S.C. § 6002.

■ McGee and Alessandro argue that Counts 39 and 40 for obstruction of justice should be dismissed along with the substantive counts because they do not fall into the enumerated exceptions to 18 U.S.C. § 6002. That statute prohibits the use of compelled grand jury testimony except in a prosecution for (1) perjury, (2) giving a false statement, or (3) otherwise failing to comply with the immunity order. 18 U.S.C. § 6002. McGee and Alessandro argue that the enumerated exceptions for perjury and making a false statement refer specifically to 18 U.S.C. § 1621 (perjury) and 18 U.S.C. § 1623 (giving a false statement) and not to 18 U.S.C. § 1503 (obstruction of justice). They assert that the Court must apply the general rule of statutory construction that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980).

This Court is not persuaded. The Supreme Court has declared that "Congress intended the perjury and false-declarations exception [to 18 U.S.C. § 6002] to be interpreted as broadly as constitutionally permissible." *United States v. Apfelbaum*, 445 U.S. 115, 122, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980). Further, the courts do

not interpret the listing of exceptions in immunity statutes as necessarily exclusive. *See, e.g., United States v. Tramunti,* 500 F.2d 1334, 1345 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974).

Other courts which have considered this precise issue have determined that a grant of immunity under § 6002 does not bar the use of the immunized testimony against the defendant on the obstruction of justice counts of an indictment. *United States v. Caron,* 551 F.Supp. 662, 672 (E.D.Va.1982), *aff'd,* 722 F.2d 739 (4th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984); *United States v. Pisani,* 590 F.Supp. 1326, 1341–44 (S.D.N.Y. 1984).[5] The Fifth Amendment does not require that a witness receive immunity from prosecution for the crimes of "interfering with, obstructing or evading the truthseeking function of a tribunal before whom the witness is summoned." *Pisani,* 590 F.Supp. at 1342.

> The rationale of *Glickstein* [*v. United States,* 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911)] and [*United States v.*] *Bryan* [339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950)] is clear. The immunity granted by the Constitution does not confer upon the witness the right to perjure himself or to withhold testimony. The very purpose of the granting of immunity is to reach the truth, and when that testimony is incriminatory, it cannot be used against him. If the witness thwarts the inquiry by evasion or falsehood, as the appellant did here, such conduct is not entitled to immunity. In fact, another crime not existing when the immunity was offered is thereby committed. The immunity does not extend *in futuro.*

*Tramunti,* 500 F.2d at 1343–44 (footnote omitted). The *Hinton* per se rule bars indictments only for crimes which the grand jury was studying at the time it heard the immunized testimony. *Pisani,*

590 F.Supp. at 1344. Therefore, neither the Fifth Amendment nor the statute, 18 U.S.C. § 6002, requires dismissal of Counts 39 and 40 for obstruction of justice.

### 2. Sixth Amendment.

In a further effort to obtain dismissal of Counts 39 and 40, McGee and Alessandro argue that the obstruction of justice counts violate the Sixth Amendment because they do not fully inform the defendants of the charges against them. In the alternative, McGee and Alessandro request that the government be directed to file a bill of particulars.

█ An indictment is generally deemed sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of the charge against which he must defend, and (3) shows with accuracy the extent to which the defendant may plead an acquittal or conviction as a bar to future prosecution. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962); *United States v. Rankin,* 870 F.2d 109, 112 (3d Cir.1989). There is no basis for requiring a greater specificity in obstruction of justice cases than in other cases. *Rankin,* 870 F.2d at 112.

Count 39 of the indictment states:

> The Grand Jury further charges that: On or about December 6, 1989, at Boston, in the District of Massachusetts,

### MATTHEW A. McGEE

> defendant herein, did wilfully, knowingly, and corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due administration of justice, that is, a drug investigation then being conducted by a Grand Jury in this District, by means of giving false, evasive, and misleading testimony, and withholding information before the Grand Jury on December 6, 1989.

---

5. Although the court in *Pisani* involved a grant of immunity pursuant to state law, not § 6002, the defendant did not argue that the use of testimony was barred by the state law, but by the United States Constitution. *Pisani,* 590

F.Supp. at 1341. Since a federal grant of immunity under § 6002 is limited to that required by the Constitution, the discussion is applicable here. *See id.* at 1341 n. 11.

All in violation of Title 18, United States Code, Section 1503.

Indictment at 119. Count 40 of the indictment charging Robert A. Alessandro contains identical language except that the date of the alleged violation is November 30, 1989 rather than December 6, 1989. Indictment at 120. "The elements of a Section 1503 offense are: '(1) endeavoring to (2) corruptly (3) influence ... the due administration of justice.'" *Id.* (quoting *United States v. Tedesco*, 635 F.2d 902, 907 [1st Cir.1980], *cert. denied*, 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 [1981]). A plain reading of the indictment reveals that Counts 39 and 40 contain all the necessary elements of this offense. The indictment states the time, place, and means of the alleged offenses. Accordingly, Counts 39 and 40 do not violate the Constitution and are not subject to dismissal.

Further, this Court in its discretion declines to require the government to file a bill of particulars with regard to Counts 39 and 40 because the indictment apprises McGee and Alessandro of the charges against them with sufficient precision. *See United States v. Schwimmer*, 649 F.Supp. 544, 550–51 (E.D.N.Y.1986) and cases cited.

### IV. *Motion to Suppress*

In the absence of dismissal, McGee has moved to suppress the use of his immunized testimony in any manner during the upcoming trial or in preparation for trial. Since this Court has dismissed all substantive counts, *supra*, Part III(a), this Court need not rule further with regard to those counts at this time. As to Count 39 for obstruction of justice, the Motion is denied for the reasons stated in Part III(b), *supra*.

### V. *Motion to Disqualify*

■ McGee argues that in order to ensure that no derivative use of his immunized testimony is made at trial, Assistant United States Attorney Brien O'Connor must be disqualified from representing the government against these defendants since he presented the immunized testimony to the grand jury that indicted them. Inasmuch as this Court has dismissed the sub-

stantive counts, *supra*, Part III(a), it need not address this issue with regard to those counts. However, this Court must address the issue with regard to Counts 39 and 40 which have not been dismissed.

The Motion must be denied for two reasons. First, this Court has determined that no violation of the Fifth Amendment occurs from the use of immunized testimony in a prosecution for obstruction of justice where the truthseeking function of the grand jury has allegedly been thwarted. *Supra*, Part III(b). It follows that any arguments about the government's exposure to immunized testimony are not relevant.

Second, the First Circuit holds, as most courts do, that the purpose of the Fifth Amendment's bar against the use of immunized testimony is not "frustrated by the government's mere exposure to immunized testimony." *Serrano*, 870 F.2d at 17 (citing *United States v. Crowson*, 828 F.2d 1427, 1430 [9th Cir.1987], *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 [1988]; *United States v. Pantone*, 634 F.2d 716, 720, [3d Cir.1980]). Without ruling on the issue, the Eleventh Circuit noted that "it would be unwise to permit an attorney familiar with the immunized testimony to participate in the trial or preparation of the case." *United States v. Byrd*, 765 F.2d 1524, 1532 n. 11 (11th Cir.1985). *Byrd* also noted that "at least two circuits have held that once a prosecuting attorney reads a defendant's immunized testimony, he cannot thereafter participate in the *trial* of the defendant, even where all the evidence to be introduced was derived from legitimate independent sources." *Id.* at 1530 (citing *United States v. Semkiw*, 712 F.2d 891 [3rd Cir.1983]; *United States v. McDaniel*, 482 F.2d 305 [8th Cir.1973]).

The First Circuit, however, has rejected this view. "We disagree with the Eighth Circuit's statement in *McDaniel*, 482 F.2d at 311, that, where the prosecutor has been exposed to the immunized testimony, 'the government is confronted with an insurmountable task in discharging the heavy burden' of proving no nonevidentiary use." *Serrano*, 870 F.2d at 17. Accordingly,

McGee's motion to disqualify Assistant United States Attorney O'Connor is denied.

## VI. *Conclusion*

For the foregoing reasons, the motions by McGee and Alessandro to dismiss all counts in the indictment against them are ALLOWED without prejudice, with the exception of Counts 39 and 40 for obstruction of justice, as to which the motions are DENIED. The motions by McGee and Alessandro for a bill of particulars are DENIED. The motion by McGee to suppress is DENIED in part.[6] The motion by McGee to disqualify is DENIED.

---

**6.** The Court expresses no opinion on the situation that will obtain should a subsequent indictment be returned against McGee by an untainted grand jury upon the substantive charges.