**UNITED STATES of America, Plaintiff,**

v.

**Tammy A. THOMAS, Defendant.**

No. C 06–00803 SI.

United States District Court, N.D. California.

March 3, 2008.

Tony Tamburello, Attorney at Law, San Francisco, CA, for Defendant.

Jeffrey R. Finigan, U.S. Attorney's Office, San Francisco, CA, Matthew A. Parrella, U.S. Attorney's Office, San Jose, CA, for Plaintiff.

## ORDER RE: VARIOUS PRE–TRIAL MOTIONS

SUSAN ILLSTON, District Judge.

On November 9, 2007, the Court heard oral argument on defendant Tammy Thomas' motion to suppress evidence, motion to dismiss the indictment, motion for discovery, and motion to preclude Assistant U.S. Attorney Jeffrey Nedrow from serving as trial counsel. Having considered the arguments of counsel and the papers submitted, the Court rules as follows.

## BACKGROUND

Defendant was a professional cyclist until she was suspended for life from competition in 2002, after testing positive for steroids. Defendant had submitted urine samples to the United States Anti–Doping Agency ("USADA"), which saved her urine samples following her suspension. In 2003, Thomas was living in Mississippi when the prosecution served her with a subpoena compelling her to testify before a grand jury in the Northern District of California. The grand jury was investigating the distribution of anabolic steroids and other performance-enhancing drugs by the Bay Area Laboratory Co-operative ("BALCO"), as well as BALCO's laundering of money gained from sales of those drugs. Defendant's name had appeared on documents obtained during the execution of a search warrant at BALCO, suggesting that defendant had connections to BALCO and also to Patrick Arnold, who manufactured and distributed steroids to athletes and to BALCO. In October 2003, defendant testified before the grand jury after receiving an immunity order that immunized her testimony from use in all criminal prosecutions other than prosecution for perjury, false declarations, or failure to comply with the order. Defendant testified to the grand jury that she had not received certain performance-enhancing drugs from Arnold, had not taken any drugs that Arnold had given her, and had never taken anabolic steroids. Three years later, after the prosecution had defendant's 2001 and 2002 urine samples retested and found performance-enhancing drugs, the grand jury issued a four-count indictment against defendant based on her 2003 grand jury testimony. The indictment charged defendant with three counts of perjury relating to her statements about

steroids and one count of obstruction of justice based on these alleged false statements. Now before the Court are defendant's motion to suppress the results of the prosecution's urine tests; motion to dismiss the indictment; motion for discovery; and motion to preclude one of the Assistant United States Attorneys from serving as trial counsel. The Court will address each motion in turn.

## DISCUSSION

### 1. Defendant's motion to suppress

Defendant moves to suppress evidence of the results of urine tests performed on defendant's urine by the prosecution in late 2006. The tests were performed by Dr. Don Catlin at the request of the prosecution and were found to contain norbolethone and tetrahydrogestrinone ("THG"). Defendant argues that the test results must be suppressed because they were performed, without a warrant, on urine that had been submitted by defendant in 2001 and 2002 to the USADA. The prosecution responds that defendant lacks Fourth Amendment standing to challenge this search of her urine and that defendant had no reasonable expectation of privacy in the urine samples for a number of reasons.

■■■ "[A] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *United States v. Pulliam,* 405 F.3d 782, 785–86 (9th Cir.2005) (internal quotation marks omitted). In order to bring a successful suppression motion, a defendant "must have standing to challenge the illegal conduct that led to the discovery of the evidence." *Id.* at 786. This principle of "Fourth Amendment standing" is a shorthand way of stating

that a defendant's own reasonable expectation of privacy must be infringed. *See id.* If the defendant has standing, the defendant must then show that she "can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (internal quotation marks omitted). This inquiry consists of two discrete questions: 1) whether the individual can assert a subjective expectation of privacy and 2) whether this expectation is objectively reasonable under the circumstances, i.e. "one that society is prepared to recognize as reasonable." *Id.* (internal quotation marks omitted).

■■■ As a threshold matter, defendant lacks so-called Fourth Amendment standing to contest the search of the urine samples. When defendant voluntarily submitted these samples to the USADA, the USADA's protocols for drug testing, effective during the years 2001 and 2002, clearly stated that "[a]ll samples collected by USADA shall be the property of USADA." *See* Finigan Decl. ex. B, ¶ 10 & ex. C, ¶ 10. Defendant argues that the urine samples provided in 2001 and 2002 were not actually the property of the USADA in 2006, when the testing occurred, because by then the protocol for drug testing, effective in August 2004, stated that "[a]ll samples collected by USADA shall be the property of USADA, but shall only be used for purposes outlined in this Protocol." *See* Balogh Decl. ex. K, ¶ 11. The Court does not agree with defendant that the August 2004 protocol governs urine samples submitted by defendant in 2001 and 2002. Under the protocols governing at that time, defendant's urine samples became the property of the USADA once she handed them over. Subsequent amendments to the protocol did not change the ownership of the samples, such as by pro-

viding that the previously-submitted samples would revert to being the property of the athlete; indeed, subsequent amendments continued to state that all samples were the property of USADA. *See* Balogh Decl. ex. K, ¶ 11. Because the USADA, not defendant, owned the urine samples, defendant has no standing to contest the prosecution's search of the samples. *See Pulliam,* 405 F.3d at 785–86.

▮ Alternatively, the Court finds that defendant had no objectively reasonable expectation of privacy in the urine samples that were tested by the prosecution. It is true, as a general rule, that athletes "possess strong privacy interests in both their drug test results and the actual specimens." *United States v. Comprehensive Drug Testing,* 473 F.3d 915, 936 (9th Cir.2006); *see also United States v. Kincade,* 379 F.3d 813, 835–37 (9th Cir.2004). For purposes of the Fourth Amendment, however, the Court must examine the particular circumstances involved in the prosecution's search to determine whether a defendant had an objectively reasonable expectation of privacy. *See Smith,* 442 U.S. at 740, 99 S.Ct. 2577. Here, at the time defendant submitted the samples to USADA, she knew or should have known that the samples would become the property of USADA. She also knew that positive test results would be publicly disclosed following a proper hearing. *See, e.g.,* Finigan Decl. ex. B, ¶ 11. In addition, defendant signed forms stating that the information she provided during her urine sample submission was *"not* provided to USADA pursuant to a doctor/patient relationship" and was *"not* to be considered a

confidential medical record." *See* Finigan Decl. ex. A. None of these factors were present in the case of *Comprehensive Drug Testing,*[1] and they demonstrate that defendant lacked an objectively reasonable expectation of privacy in her urine samples under the circumstances of the USADA process and protocols. *Smith,* 442 U.S. at 740, 99 S.Ct. 2577. Accordingly, the Court DENIES defendant's motion to suppress evidence.

### 2. Defendant's motion to dismiss the indictment

#### A. The perjury trap doctrine

▮ Defendant argues the Court should dismiss her indictment because the prosecution violated her due process rights by misusing the investigatory powers of the grand jury in order to secure perjury charges against her. Although the Ninth Circuit has "not yet recognized a so-called perjury trap as a valid defense, [it has] noted cases from other jurisdictions holding that the government violates due process when it 'calls a witness before the grand jury with the primary purpose of obtaining testimony from him in order to prosecute him later for perjury.' " *United States v. McKenna,* 327 F.3d 830, 837 (9th Cir.2003) (quoting *United States v. Chen,* 933 F.2d 793, 796 (9th Cir.1991)). The Ninth Circuit has recognized that a perjury trap might violate due process or be an abuse of grand jury proceedings when the prosecution uses its investigatory powers "to secure a perjury indictment on matters which are neither material nor germane to a legitimate ongoing investigation of the grand jury." *Chen,* 933 F.2d at 796–97.

---

1. For the same reason, defendant's reliance on *Ferguson v. City of Charleston,* 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), is misplaced. There, the Supreme Court held, under a special needs analysis, that a hospital could not provide the drug test results of pregnant women to law enforcement, but the women had not consented to drug testing, had not consented to the public disclosure of testing results, and had not been aware that their urine samples would become the property of the hospital.

The perjury trap doctrine is inapplicable, however, "[w]hen testimony is elicited before a grand jury that is attempting to obtain useful information in furtherance of its investigation, or conducting a legitimate investigation into crimes which had in fact taken place in its jurisdiction." *McKenna,* 327 F.3d at 837 (quoting *Chen,* 933 F.2d at 797).

Defendant argues that the taking of her grand jury testimony amounted to a perjury trap for two reasons: 1) she claims her testimony was not material to a legitimate investigation into crimes occurring within the grand jury's jurisdiction, *see Chen,* 933 F.2d at 796–97; and 2) she argues her testimony was elicited through repetitious questioning whose purpose was to coax her into committing perjury, *see id.* at 797 (citing *Bursey v. United States,* 466 F.2d 1059, 1080 n. 10 (9th Cir.1972)). Even assuming the Ninth Circuit would recognize the perjury trap doctrine as a valid defense, the Court finds that, as a matter of law, defendant's grand jury testimony was not immaterial because defendant "was a person who likely would have knowledge of" BALCO and Arnold and their involvement with illegal performance-enhancing substances. *Id.* Nor does the Court find that the purpose of defendant's repetitious questioning was to coax defendant into committing perjury, as "[s]ome repetition in the examination of a witness before a grand jury is inevitable and, under some circumstances, it may even be desirable." *Bursey,* 466 F.2d at 1079; *see also id.* at 1079 n. 9 ("A grand jury ... has an appropriate interest in hearing responses to questions about the same matter put in different ways to test the witness' powers of recollection and credibility."); *Chen,* 933 F.2d at 795 n. 1 (quoting the repetitious questioning of defendant Chen before the grand jury). Accordingly, on this record, the Court DENIES defendant's motion to dismiss the indictment for grand

jury abuse. For the same reasons, the Court also DENIES defendant's motion to dismiss the indictment because her false testimony was not material to the grand jury's legitimate inquiry. The issue of materiality will be decided by the jury at trial.

**B. Obstruction of justice count**

Defendant argues that Count IV of the indictment, charging defendant with obstruction of justice in violation of 18 U.S.C. § 1503, should be dismissed because the immunity order prevents such a charge. That immunity order states that defendant's "testimony and other information compelled from" her "may not be used against her in any criminal case, except a prosecution for perjury, false declaration, or otherwise failing to comply with this order." Balogh Decl. ex. M; *see also* 18 U.S.C. § 6002. Defendant argues that a charge of obstruction of justice falls beyond the exceptions provided in the immunity order because obstruction of justice is a different criminal violation from perjury and false declaration, and does not fall into the category of crimes for "otherwise failing to comply with this order." The Court DENIES defendant's motion to dismiss Count IV because "all courts which have passed on the issue have decided that a prosecution for obstruction of justice is one for 'otherwise failing to comply with the order' compelling testimony." *United States v. DeSalvo,* 797 F.Supp. 159, 165 (E.D.N.Y.1992); *see also United States v. Black,* 776 F.2d 1321, 1327 (6th Cir.1985); *United States v. McGee,* 798 F.Supp. 53, 58–59 (D.Mass.1992).

The Court also DENIES WITHOUT PREJUDICE defendant's motion to dismiss or strike this charge based on constructive amendment because the motion is premature. If, after evidence has been presented to the jury at trial, defendant

continues to believe that Count IV has been constructively amended, defendant may move for a limiting instruction at that time. *See United States v. O'Connor*, 737 F.2d 814, 822 (9th Cir.1984) (limiting instructions may cure an improper amended of the indictment).

### C. Duplicity of Counts I and III

 Defendant also argues that Counts I and III of the indictment should be dismissed because they charge multiple false declarations made by defendant, and are thus duplicitous. "An indictment is duplicitous where a single count joins two or more distinct and separate offenses." *United States v. Ramirez–Martinez*, 273 F.3d 903, 913 (9th Cir.2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir.2007). "The vices of duplicity arise from breaches of the defendant's Sixth Amendment right to knowledge of the charges against him, since conviction on a duplicitous count could be obtained without a unanimous verdict as to each of the offenses contained in the count." *United States v. Aguilar*, 756 F.2d 1418, 1420 n. 2 (9th Cir.1985). The Court finds that Counts I and III of the indictment are duplicitous because each count charges defendant with giving false testimony in response to two distinct questions, either one of which could independently serve as the basis for a perjury conviction. The first count charges perjury based on defendant's testimony with regard to (1) "get[ting] any other services from Mr. Arnold or products," and (2) "get[ting] ... banned or illegal performance-enhancing drugs from Mr. Arnold." Thus, a jury could find defendant guilty of either lying about receiving *services* from Mr. Arnold, lying about receiving performance-enhancing *drugs* from Mr. Arnold, or both. The third count presents similar problems, as a jury could find defendant guilty of lying about (1) *taking* anabolic steroids, (2) *receiving* anabolic steroids, or (3) both. Both counts, as currently written, would raise serious questions about the unanimity of the jury's verdict. Therefore, the prosecution shall elect the charge within each count on which it will rely at trial. *Ramirez–Martinez*, 273 F.3d at 915. In the alternative, because the indictment is short and each count contains very few questions, the prosecution may move for a limiting instruction that would cure the defects noted here. *See id.* (" 'Defendant's remedy is to move to require the prosecution to elect ... the charge within the count upon which it will rely. Additionally, a duplicitous ... indictment is remediable by the court's instruction to the jury particularizing the distinct offense charged in each count in the indictment.' ") (quoting *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir.1981)). While the Court agrees with defendant that Counts I and III are duplicitous, her motion to dismiss these counts is DENIED.

### 3. Defendant's motion for discovery

### A. Identities of the grand jurors

Defendant argues the Court should compel the prosecution to produce the names, addresses, and telephone numbers of all members of the grand jury sitting during defendant's 2003 grand jury testimony, pursuant to the Sixth Amendment, fundamental fairness embodied in the Fifth Amendment, and Federal Rule of Criminal Procedure 6(e)(3)(E)(ii).

 The Supreme Court consistently has recognized that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *see also In re Special Grand Jury*, 674 F.2d 778, 781 (9th Cir.

1982) (noting the "long-standing rule of secrecy of the grand jury"). Rule 6(e)(3)(E)(ii) provides an exception to the secrecy of grand jury proceedings, allowing the courts to "authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." To justify disclosure under Rule 6(e), defendants "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. 1667.

▆ Defendant fails to meet the *Douglas Oil* requirements here. Defendant cites no authority for her argument that she should be allowed to access the names and contact information of all members of the grand jury, and the Court does not believe that defendant has met her burden of showing that the need for disclosure of this information is greater than the need for continued secrecy. The Court therefore DENIES defendant's motion to discover the identities of the grand jury members.

### B. Documents material to preparing a defense

▆ Defendant seeks a variety of documents that she claims are material to preparing her defense, Fed.R.Crim.P. 16(a)(1)(E) (i), or are grand jury matters that may be disclosed pursuant to Rule 6(e)(3)(E). First, defendant seeks all grand jury subpoenas issued in relation to her indictment, including all subpoenas that resulted in materials mentioning defendant, and all documents received in response to these subpoenas. In order to access these grand jury documents, the defendant "must show that the material [she] seek[s] is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [her] request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. 1667. The Court agrees with defendant that some of this material may be relevant to defendant's argument that her testimony was not material to the grand jury investigation. The Court therefore GRANTS this motion, but only as to documents relating directly to defendant's indictment that were received in response to grand jury subpoenas. To protect the identity of the grand jury witnesses, the Court orders the prosecution to redact the names of any grand jury witnesses from the documents provided to defendant. In addition, the Court DENIES defendant's motion to discover the identities of the grand jury witnesses, and also DENIES defendant's request for the subpoenas themselves. *See id.* ("Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties.").

The Court also GRANTS defendant's motion to compel the prosecution to turn over evidence recovered during the BALCO search that shows defendant's relationship with Patrick Arnold and BALCO, but the Court DENIES defendant's motion to turn over all other documents relating to the indictment of Arnold as overbroad and not necessary, particularly given the other materials that will be disclosed to defendant.

██ Defendant also seeks administrative records of the district court in the prosecution's possession showing when the BALCO grand jury was impaneled and when its term was extended. The Ninth Circuit has held that such ministerial documents, even related to grand jury proceedings, should be available to the public "[a]bsent specific and substantial reasons for a refusal." *In re Special Grand Jury,* 674 F.2d at 781. The prosecution has not cited any specific and substantial reasons for withholding such ministerial records from defendant, so the Court GRANTS defendant's motion with regard to this request.

Finally, Defendant seeks information redacted from an affidavit executed pursuant to a warrant in the Eastern District of New York. The information concerns the prosecution of Kirk Radomski. Even assuming, for the purposes of argument, that the prosecution may have overreached in the Radomski case, defendant's testimony still may have been relevant to the BALCO grand jury investigation. The Court DENIES defendant's request.

### C. Other miscellaneous discovery requests

Defendant asks the Court to order the prosecution to turn over a variety of other materials. The Court DENIES defendant's request for impeachment evidence relating to potential witnesses because the prosecution has stated that it plans to comply with its obligations to provide exculpatory and impeachment evidence when the time comes. Similarly, the Court DENIES defendant's request for a preservation order because the prosecution asserts that it will disclose exculpatory and impeachment evidence. The Court DENIES defendant's request for reports prepared by expert witnesses because the prosecution has already disclosed all reports by the expert witnesses it intends to call, and asserts that it will provide adequate notice for any additional expert witnesses. The Court DENIES defendant's request for documents relating to the prosecution's receipt of defendant's medical records, as defendant has provided no indication of why this information is material or relevant to defendant's case. The Court also DENIES defendants' request for the identity of all informants or cooperating witnesses involved in this case, because the prosecution does not intend to use any informants as witnesses.

### 4. Defendant's motion to preclude AUSA Nedrow from serving as trial counsel

Finally, defendant moves to preclude Assistant United States Attorney Jeffrey Nedrow from serving as trial counsel during defendant's trial because Nedrow was the attorney who questioned defendant in front of the grand jury. Defendant relies on the advocate-witness rule and the rule against vouching by the prosecution. The parties agree that this motion is premature, and the Court DENIES the motion without prejudice.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to suppress evidence [Docket No. 46], DENIES defendant's motion to dismiss the indictment [Docket No. 44], DENIES IN PART and GRANTS IN PART defendant's motion for discovery [Docket No. 49], and DENIES WITHOUT PREJUDICE defendant's motion to preclude Nedrow from serving as trial counsel [Docket No. 48].

**IT IS SO ORDERED.**