Joseph M. GERSTEN, Plaintiff,

v.

Katherine Fernandez RUNDLE, State Attorney for the Eleventh Judicial Circuit in and for Dade County, Florida, Defendant.

No. 93–1229–CIV.

United States District Court, S.D. Florida.

Sept. 14, 1993.

Joseph R. Gomez, Miami, FL, for plaintiff.

Michael J. Neimand, Asst. Atty. Gen., Michael R. Band, Chief Asst. State Atty., Miami, FL, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss, filed on July 22, 1993. A hearing was held on the motion on August 6, and Plaintiff filed a Memorandum in Opposition to Defendant's Motion to Dismiss on August 9.

Plaintiff has filed suit under 42 U.S.C. § 1983 (1988) seeking injunctive relief against the enforcement of a civil contempt order secured by the State of Florida in a state court, and seeking, as well, financial compensation. Specifically, Plaintiff prays that

(a) a temporary restraining order and a permanent injunction issue [from this Court,] enjoining Defendant Rundle from further pursuing her petition for rule to show cause and Plaintiff's incarceration deriving therefrom;

(b) this Court vacate the Order of Contempt issued [by the state court] on March 18, 1993 detaining Plaintiff indefinitely ...[;]

(c) Defendant be permanently enjoined from seeking any further rules to show cause in the collateral proceeding being conducted by Mr. Band on behalf of the State Attorney's Office;

(d) Plaintiff be awarded such other and further relief as may be just and equitable under the circumstances, including but not limited to his costs and attorney's fees in this matter.

Pl.'s Compl., pp. 9–10.

Plaintiff bases his suit on actions allegedly taken by Defendant in bad faith, resulting in the denial of his constitutional rights. He asserts that the following constitutional rights were violated: (1) his Fourteenth Amendment due process right to be free from bad-faith prosecutions; (2) his Fourteenth Amendment equal protection right to be free from selective prosecution; and (3) his First Amendment free speech right to seek and hold public office.

### I. Factual Background

The following facts are taken from Plaintiff's Complaint for Injunctive Relief and are accepted as true for the purpose of ruling on Defendant's Motion to Dismiss. They are not findings of fact in an official sense; the motion before the Court is one to dismiss, not one for summary judgment, and Defendant has not filed an Answer to Plaintiff's Complaint. These facts are set forth to provide the proper context of this Court's holdings.

Plaintiff was a Dade County Commissioner until his electoral defeat in March 1993. On April 29, 1992, Plaintiff reported to the police that his automobile had been stolen from his home in Coral Gables, Florida.

The automobile in question was recovered by the police within several days and returned to Plaintiff. Two individuals, named Claudia Lira and Kenneth Elswick, were found in possession of the automobile at the time it was recovered. Both are convicted

felons and Lira has additionally been convicted of prostitution. After their arrest for the theft of Plaintiff's automobile, they alleged to police that Plaintiff had solicited Lira for prostitution, had engaged in sexual acts with her, had used cocaine at a crack house, and had purchased cocaine from another individual while at the crack house.

The State Attorney commenced an investigation of the allegations made against Plaintiff by Lira and Elswick. Assistant State Attorney Richard Gregorie was placed in charge of this investigation of Plaintiff. Plaintiff was ordered to submit to an FBI test of his hairs for residue of illegal drugs. The results of these tests were negative.

The State then commenced an investigation of Lira and Elswick for the theft of Plaintiff's automobile. This investigation was headed by Assistant State Attorney Michael Band. At that time, both Lira and Elswick were incarcerated on an unrelated warrant. The investigation proceeded despite the fact that both had confessed to the theft of the automobile and were immunized.

The State Attorney maintains that the investigations by Gregorie and Band are independent and segregated, that a "Chinese wall" has been erected between the two investigators. Plaintiff contends that that wall has been breached by the sharing of information between personnel working on opposite investigations and that such breach was in aid of Gregorie's investigation of Plaintiff, not Band's investigation of Lira and Elswick.

The State then subpoenaed Plaintiff to appear on the day of the primary election in order to give testimony in the Band investigation of Lira and Elswick. Plaintiff was to be called as a victim and witness to the event, and as such, he was granted use immunity. At the hearing, Plaintiff refused to respond to most of the questions submitted by the investigating attorney, on the grounds that they were irrelevant to an investigation of Lira and Elswick. He contends that he is the true target of Band's investigation and that the State was attempting to set a perjury trap for him.

The state court, at the request of the State Attorney, then held a hearing as to why Plaintiff should not be held in contempt. At that hearing, Plaintiff contended, *inter alia*, that the State was selectively using its subpoena power in a discriminatory and unconstitutional manner. As grounds for this assertion, Plaintiff alleged (and alleges in this Court) primarily four facts. First, no individual situated similarly to Plaintiff has ever been held in contempt for failing to testify in a grand jury investigation of the crime to which he was a witness or of which he was a victim. Michael Strozer, Deputy Chief of the Felony Screening Unit for the State Attorney's Office, testified in state court that no other victim/witness of a crime in Dade County had ever been the subject of a rule to show cause in an auto theft case or even in cases involving more serious crimes. Second, the investigating attorney asked Plaintiff questions Plaintiff considered irrelevant to an investigation of Lira and Elswick, including what Plaintiff ate for breakfast on the day of the theft. Third, the State Attorney evidenced its bad faith by calling Plaintiff to testify on the day of the primary election in which he was a candidate. And fourth, the State Attorney had publicly supported Plaintiff's main opponent in the election.

At the state court hearing, the trial judge denied Plaintiff's motions to quash the subpoena, and, on March 18, 1993, she found Plaintiff in contempt of court. Plaintiff was incarcerated until he agreed to testify in accordance with the trial court's order. Plaintiff was released several weeks later for health reasons, pending an appeal of the trial court's order. That order finding Plaintiff in contempt was affirmed by the Florida Third District Court of Appeal on June 2, 1993. Plaintiff now faces reincarceration until he purges himself by testifying in accordance with the trial court's order of March 18.

## II. *Legal Standard*

### (a) *Motion to Dismiss*

█ This Court is generally reluctant to grant motions made under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss a complaint for failure to state a claim upon which relief can be granted. The liberal pleading rules embraced by Rule 8 of

the Federal Rules require only that a complaint set forth a generalized statement of facts from which a defendant will be able to frame a responsive pleading. Fed.R.Civ.P. 8; *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, when there exists an insuperable bar to relief, the normal factors counseling a court to deny a motion to dismiss are not present. *United States v. Uvalde Consol. Indep. School Dist.,* 625 F.2d 547, 549 n. 1 (5th Cir.1980), *cert. denied,* 451 U.S. 1002, 101 S.Ct. 2341, 68 L.Ed.2d 858 (1981)¹; 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990) ("Wright & Miller").

■ For the purpose of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. Wright & Miller at § 1357. There are a few exceptions to this rule, such as when the facts alleged are internally inconsistent or when they run counter to facts of which the Court can take judicial notice. *Id.* Conclusory allegations and unwarranted deductions of fact also are not accepted as true. *Assoc. Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974).

■ In the context of a claim under 42 U.S.C. § 1983, a defendant's motion to dismiss will normally be granted only if the facts alleged by plaintiff, taken as true, do not show that the defendant deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the defendant acted under color of state law. *Whitehorn v. Harrelson,* 758 F.2d 1416, 1419 (11th Cir. 1985).

In ruling on the instant motion, there exist the additional issues associated with the fact that the injunctive relief sought by Plaintiff in his Complaint would enjoin a state, as distinguished from an entity of the federal government.

**(b)** *Injunctive Relief*

Under the Anti-Injunction Act, 28 U.S.C. § 2283, a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Supreme Court has held that suits brought under § 1983 qualify as an expressly authorized exception. *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

■ In the seminal case of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that a federal court could enjoin a state court criminal proceeding only where a defendant could show "bad faith, harassment, or [some] other unusual circumstance that would call for equitable relief. . . ." *Id.* at 54, 91 S.Ct. at 755. The reasons for this restriction are that federal intervention in on-going state criminal proceedings might result in duplicative legal proceedings, could disrupt the state criminal justice system, or could reflect negatively upon the state court's ability to enforce constitutional principles. *Steffel v. Thompson,* 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974); *see also Wooley v. Maynard,* 430 U.S. 705, 709–10, 97 S.Ct. 1428, 1432–33, 51 L.Ed.2d 752 (1977). These same rationales have been extended to limit federal intervention in some state court proceedings that are not criminal in nature, including contempt proceedings. *See Juidice v. Vail, infra* Part III(b), 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

■ Thus, if this Court finds that there exists a pending state court proceeding, Plaintiff would have to meet the requirements of *Younger* and show "bad-faith enforcement or other special circumstances." *Steffel,* 415 U.S. at 454, 94 S.Ct. at 1213. Outside the *Younger* context, as explained *infra,* a plaintiff seeking injunctive relief must show, *inter alia,* that he will suffer irreparable harm unless the injunction is granted. In the Eleventh Circuit, "[a] showing of bad faith or harassment is equivalent

---

**1.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedents all decisions of the former Fifth Circuit issued before October 1, 1981.

to a showing of irreparable injury under *Younger,* and irreparable injury independent of the bad faith prosecution need not be established." *Fitzgerald v. Peek,* 636 F.2d 943, 944 (5th Cir.1981); *accord Wilson v. Thompson,* 593 F.2d 1375, 1381 (5th Cir. 1979). Further, the threat of multiple or repeated prosecutions need not be shown in order to establish bad faith prosecution, nor must the plaintiff prove that the prosecution could not possibly result in a valid conviction. *Fitzgerald,* 636 F.2d at 944–45; *Wilson,* 593 F.2d at 1381.

Alternatively, if this Court does not consider there to exist an on-going state court proceeding, then Plaintiff would only have to meet the normal equitable requirements for an injunction. *Westin v. McDaniel,* 760 F.Supp. 1563, 1568–69 (M.D.Ga.), *aff'd,* 949 F.2d 1163 (11th Cir.1991). To satisfy the normal equitable requirements, a party seeking injunctive relief in federal court must show: (1) a substantial likelihood that he will prevail on the merits; (2) that he will suffer irreparable harm unless the injunction is granted; (3) that the threatened injury to him outweighs the damage to the opposing party; and (4) that the injunction, if issued, will not be adverse to the public interest. *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.,* 697 F.2d 1352, 1354–55 (11th Cir.1983). Defendant, in her Motion to Dismiss, challenges Plaintiff only on the second of these four requirements: that Plaintiff will suffer irreparable harm unless the injunction is granted.

This Court will examine both tests together, for Plaintiff has failed to satisfy either requirement: that he show a bad-faith prosecution under *Younger,* or that he show irreparable injury under the non-*Younger* scenario. The reason for Plaintiff's failure to satisfy either requirement is the same: even if the actions of the state have been taken in bad faith, they have not risen to the level of an imminent prosecution, and they have, as yet, not infringed on any of Plaintiff's constitutional rights.

### III. *Whether Plaintiff's Constitutional Rights Were Violated by a Bad–Faith Prosecution*

Plaintiff alleges that he is being prosecuted in bad faith or is threatened with such a prosecution. This argument rests upon one of two related grounds: (a) that the state has set a perjury trap for Plaintiff, or (b) that the State's continued attempt to have Plaintiff held in contempt constitutes a bad-faith prosecution since it seeks to incarcerate Plaintiff in the same way as would a criminal prosecution.

### (a) *The Perjury Trap*

The argument that the State has set a perjury trap that would entitle Plaintiff to injunctive relief is flawed. A perjury trap "is created when the government calls a witness before the grand jury for the primary purpose of obtaining testimony from him in order to prosecute him later for perjury." *United States v. Chen,* 933 F.2d 793, 796 (9th Cir.1991) (citation omitted). For a perjury trap to exist, the government must be using its subpoena power to secure the perjury indictment "on matters which are neither material nor germane to a legitimate ongoing investigation of the grand jury." *Id.* (citation omitted); *see also Brown v. United States,* 245 F.2d 549, 555 (8th Cir.1957) (holding that a perjury trap existed where the purpose of the prosecutor was solely to elicit perjured testimony on matters that had "no tendency to support any possible action of the grand jury within its competency"). Thus, when the State is " 'attempting to obtain useful information in furtherance of its investigation', or 'conducting a legitimate investigation into crimes which ha[ve] in fact taken place within its jurisdiction', the perjury trap doctrine is, by definition, inapplicable." *Chen,* 933 F.2d at 797 (citations omitted).

In the instant case, then, there are two critical issues: Are the questions being asked by the State designed to elicit useful information in furtherance of a legitimate investigation into local crimes? and Can Plaintiff rely upon this argument at this juncture? Plaintiff may be able to make a prima facie showing that the questions submitted by the State are not, in reality, intended to further the legitimate investigation to which the State claims they are directed—namely,

the criminal case against the two individuals accused of stealing Plaintiff's automobile. Nonetheless, Plaintiff is unable to petition for injunctive relief at this time. For this Court to grant injunctive relief under normal equitable standards, the threat of injury must be actual and imminent, not remote and speculative. Here, the injury must be that of prosecution for perjury, and that can only be actual and imminent after Plaintiff has testified. Under the *Younger* standards, Plaintiff must similarly show a bad-faith prosecution, or at least the threat of one, by the State. Again, none can be shown, or indeed is even possible, until after Plaintiff has testified. Bad faith by the State in the investigatory process can only be challenged in federal court when that bad faith manifests itself in an imminent prosecution.

Plaintiff contends that the threat of prosecution for perjury is actual and imminent because the State has stated it will institute such a prosecution if, when Plaintiff testifies, his version of events related to the theft of his automobile differs from that the State believes to be true. Still, this Court cannot know with certainty to what Plaintiff will testify when he is questioned under oath; presumably, he will tell the truth and could prevail on the merits in any subsequent perjury trial. At such a trial, he could also assert a perjury-trap defense. The Ninth Circuit was faced with this same issue (*after* the witness had already testified) and held that the government's anticipation that a witness would commit perjury was insufficient to satisfy the requirements of the perjury trap-doctrine. In *Chen*, the witness argued that the government had anticipated he would commit perjury because he had lied to the government in informal interviews prior to his grand jury testimony. 933 F.2d at 798. The court held that although the government might have anticipated the witness would lie, the government surely also recognized that the witness might testify truthfully. Quoting the Supreme Court, the Eleventh Circuit stated that when a witness "ha[s] been placed under a solemn oath to tell the truth, many witnesses feel obliged to do just that." *Id.* (quoting *United States v. Washington*, 431 U.S. 181, 188, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977)).

Thus, it is clear that if the questions submitted by the State are intended to further a legitimate investigation, then the fact that the State believes the witness has lied in previous statements and may well do so under oath is insufficient to establish the existence of a perjury trap. Of course, this begs the question whether the questions submitted by the State in this case are material and germane to a legitimate on-going investigation, but this is an argument Plaintiff was free to advance in the state court contempt hearing and will be free to advance again if he faces an imminent threat of prosecution after he has testified.

### (b) *The Order of Contempt*

Plaintiff also contends that his incarceration for contempt constitutes a bad-faith prosecution by the State. He seeks to prevent the irreparable injury which he says will ensue from the State's continued pursuit of its petition for rule to show cause, including damage to his health as a result of re-incarceration on the order of contempt.

The Supreme Court, however, has cautioned federal courts against interfering in state court contempt proceedings. In *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Supreme Court held that the *Younger* principles applied to a case in which the state's contempt process was at issue. In such a situation, the Court said, "federal-court interference with the State's contempt process is 'an offense to the state's interest ... likely to be every bit as great as it would be were [it] a criminal proceeding.'" *Id.* at 336, 97 S.Ct. at 1217, (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975)). The Court emphasized that judicial orders must be followed by individuals "however improvidently [those orders were] made, even if it may seem certain that the court acted in granting them under misapprehension or mistake". *Id.* at 336, n. 12, 97 S.Ct. at 1216 n. 12 (quoting *Ketchum v. Edwards*, 153 N.Y. 534, 47 N.E. 918, 920 (1897)). The Court further pointed out that interference with the contempt process would also violate the other interests *Younger* sought to pro-

tect: it would "'unduly interfere[ ] with the legitimate activities of the Stat[e],'" (*Id.* at 336, 97 S.Ct. at 1217 (quoting *Younger,* 401 U.S. at 44, 91 S.Ct. at 750)) and could "'readily be interpreted "as reflecting negatively upon the state courts' ability to enforce constitutional principles."'" (*Id.* (quoting *Huffman,* 420 U.S. at 604, 95 S.Ct. at 1208)). The Court in *Juidice* made clear that all that is necessary for federal abstention to be required is that the individual be accorded an opportunity to fairly pursue his federal claims in the state proceedings. *Id.* at 337, 97 S.Ct. at 1218 (citing *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)).

In the instant case, Plaintiff has indeed had an opportunity to fairly pursue his federal claims in the state contempt proceeding. He can appeal the disposition of those issues through the state court system and can even file a petition for certiorari with the United States Supreme Court. The Supreme Court has made clear that in situations such as this, United States District Courts are not to intervene by granting injunctive relief, at least not absent a showing of bad faith on the part of the state courts; that is, for a United States court to intervene, a plaintiff must show that the opportunity to pursue his federal claims in the state court system was not fair. No such showing has been made by Plaintiff, and this Court consequently is not free to intervene in the state's contempt process.

### IV. Selective Enforcement

Plaintiff contends that his constitutional rights have been violated by the State's institution of a selective enforcement proceeding against him. Defendant in her Motion to Dismiss has characterized the State's actions against Plaintiff as an investigation, and Defendant argues that a prosecution, not an investigation, must exist in order for the doctrine of selective enforcement to apply and for Plaintiff's constitutional rights to be implicated.

■ Plaintiff has responded that the instant case is tantamount to a criminal proceeding, just as if the state had filed an information against Plaintiff. This assertion

is incorrect, for the case at hand involves civil contempt, rather than criminal contempt. Although both civil and criminal contempt proceedings may result in the incarceration of the individual charged, the criminal contempt charges are for conduct already taken by the individual, and in that context the individual has no power to purge his contempt prior to the expiration of the jail sentence imposed by the court. In the State of Florida, a criminal contempt proceeding is treated just as a criminal prosecution, with the individual entitled to the full panoply of constitutional rights associated with a criminal prosecution. In the context of civil contempt, by contrast, the proceeding is not treated as a criminal prosecution because the contemnor "carries the key to his cell in his own pocket." *Pugliese v. Pugliese,* 347 So.2d 422, 424 (Fla.1977); *see Andrews v. Walton,* 428 So.2d 663, 665–66 (Fla.1983) (contrasting civil and criminal contempt proceedings under Florida law). Thus, the instant case of contempt cannot be deemed tantamount to a criminal proceeding, as Plaintiff contends.

■ Defendant, however, is mistaken in the first instance in asserting that a criminal proceeding is necessary in order to find impermissible selective enforcement. The two cases cited by Defendant indeed involve allegations of selective enforcement in the context of a prosecution; however, neither of those cases indicates that a prosecution is a necessary element for the doctrine of selective enforcement to apply. There exist cases where a claim of selective enforcement has been sustained in the absence of a prosecution. *See, e.g., Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (holding a city board's denial of a retail license to a Chinese immigrant to be invalid on the grounds of selective enforcement); *Sea–Gate, Inc. v. United States,* 4 Cl.Ct. 25 (1983) (considering on the merits a claim of selective enforcement where the government sought to enforce easement rights against the plaintiffs). Selective enforcement claims may be sustained in a variety of contexts, including administrative, civil, and criminal proceedings.

Nevertheless, as one court has recognized, "[e]qual protection challenges to prosecutori-

al [or enforcement] decisions made by the government face an uphill struggle." *Pakis v. City of Chicago*, 1992 WL 159310 at *6, 1992 U.S.Dist. LEXIS 9567 at *17 (N.D.Ill. June 30, 1992) (brackets added). It is the exceptional case where a plaintiff is able to convince a federal district court to issue injunctive relief to prevent what he alleges to be selective enforcement by a state. The Supreme Court has cautioned federal courts to generally refrain from interfering in prosecutorial or enforcement decisions because the judiciary is ill-suited to examine the various factors that are relevant to such determinations. *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), *cited in Pakis*, 1992 WL 159310 at *6, 1992 U.S.Dist. LEXIS 9567 at *18.

■■■ In *University Club v. City of New York*, 655 F.Supp. 1323 (S.D.N.Y.1987), the district court dismissed the plaintiffs' allegations of selective enforcement. The court quoted the Second Circuit in formulating the test as follows: To make out a prima facie case of selective enforcement, a plaintiff must show "(1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution [or enforcement], and (2) that the government's prosecution [or enforcement] has been invidious or in bad faith, *i.e.*, based upon impermissible considerations...." *Id.* at 1328 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974)) (brackets added). The court in *University Club* held that the plaintiffs' complaints did not adequately satisfy these two prongs, so the issue never made it to trial.

In *Pakis v. City of Chicago*, 1992 WL 159310, 1992 U.S.Dist. LEXIS 9567 (N.D.Ill. June 30, 1992), the plaintiffs alleged that the city of Chicago had unlawfully engaged in the selective enforcement of its parking ordinances. To avoid encroaching upon the state in an area traditionally reserved to state and local authorities, and to avoid deciding constitutional issues unnecessarily, the court dismissed the case, directing the plaintiffs to seek a state remedy first. As for the allegation of selective enforcement, the court dismissed that count with prejudice, finding the plaintiffs had failed to allege specific facts indicating that the situations where the government had chosen not to enforce the regulations were truly similar.

In *Sea-Gate, Inc. v. United States*, 4 Cl.Ct. 25 (1983), the federal Claims Court reached the merits of a selective enforcement claim. The plaintiffs in that case had sought to develop property adjacent to the Atlantic Inland Waterway, a government-owned and -maintained navigable waterway extending from Massachusetts to Florida; and they contended the United States had selectively enforced its easement rights on that property by denying them certain permits and by litigating the issue in court. As support for their selective enforcement argument, the plaintiffs pointed to numerous situations in Florida, South Carolina, and North Carolina where the government had permitted massive incursions on its easement rights and had not enforced its rights as it had against the plaintiffs. The court in *Sea-Gate* paraphrased the test enunciated in *University Club* and held the plaintiffs to a high standard of specificity. To meet the first prong of the test, the court required the plaintiffs to "establish the magnitude of the violations alleged and show that they [were] of the same or similar characteristics as the one established against them." *Id.* at 31.

The court further explained, "To determine whether other persons not sued are situated similarly to plaintiffs, the court must determine if there are factors permitting some rational basis for distinguishing among them." *Id.* (citing *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973)). The *Sea-Gate* court carefully examined each of the situations to which the plaintiff had pointed, and concluded that "when the type of easement, the availability and responsibility of local sponsors, and the nature, extent and location of construction are considered, [this development] stands out as unique." *Id.*

In the context of a motion to dismiss, then, the inquiry into whether the first prong of the test has been satisfied involves assessing whether a plaintiff has alleged that the individuals referred to in the complaint are indeed similarly situated.

In the instant case, Plaintiff has failed to allege facts that would support a claim of selective enforcement. Although Plaintiff has pointed to the testimony of Michael Strozer, Deputy Chief of the Felony Screening Unit for the State Attorney's Office, that no other victim of, or witness to, an auto theft in Dade County has been the subject of a rule to show cause, Plaintiff has not alleged that the situations and individuals in those other auto theft cases were truly similar to the one in which he was involved. He has not alleged, for example, that the other cases involved discrepancies about the location from which the auto had been stolen or that the State Attorney in the other cases had an equal amount of evidence to pursue. The mere fact (if accepted as true) that no other victim or witness of an auto theft has been the subject of a rule to show cause is not sufficient to support a claim of selective enforcement where Plaintiff has not adequately alleged that the other auto theft cases presented substantively similar situations.

### V. Plaintiff's Constitutional Right to Seek and Hold Public Office

In his Complaint, Plaintiff alleges that Defendant sought to hinder the free exercise of his First Amendment rights. Plaintiff states that Defendant in bad faith used her political power to thwart him in his election campaign. Defendant counters that damage to one's reputation is not actionable under § 1983 and that there is no federally protected right to *win* an election to public office—only to *run* in such an election.

The Eighth Circuit in *Kaylor v. Fields,* 661 F.2d 1177 (8th Cir.1981), involved issues and facts similar to those in the case at hand. There, the plaintiffs were former elected officials who had brought suit against a state attorney after losing their bids for re-election. One of the plaintiffs' claims was that the state attorney had made "continual, baseless accusations of criminal activity without filing any charges and [had] made derogatory statements to the news media." *Id.* at 1181. Citing *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1975), the Circuit Court upheld the dismissal of this claim on the grounds that damage to one's reputation,

without some resultant denial of a constitutional right, is not actionable under § 1983. Another of the plaintiffs' claims in that case was that the state attorney "threatened to prosecute them in an attempt to punish them for their political beliefs and for exercising their right to free speech." *Id.* at 1182. The Eleventh Circuit held that this second claim did not require abstention under the *Younger* doctrine and, if properly pleaded, would state a cause of action. However, due to the absence of a single specific factual allegation to buttress the legal claim, the court affirmed the district court's order of dismissal, specifically permitting the re-filing of a complaint that alleged facts with reasonable specificity to support the claim.

In the instant case, as has been pointed out above in Part III(b), there existed at the time of the election, and there continues to exist, no threat of prosecution that can be seen as hindering Plaintiff in the exercise of his First Amendment rights. The *Kaylor* court did not address whether the first of the allegations in that case—that of "continual, baseless accusations of criminal activity without filing any charges and [of making] derogatory statements to the news media"—could, if pleaded with the requisite specificity, constitute a cause of action in light of a consequent electoral loss. The court recognized, as did the Supreme Court in *Paul,* that such a charge, *coupled with a resultant denial of a constitutional right,* would indeed be actionable under § 1983. The question in the instant case, then, becomes whether Plaintiff's electoral loss (allegedly the result of the statements and actions of Defendant state attorney), represents the denial of a constitutional right.

The Eleventh Circuit addressed this question in *Flinn v. Gordon,* 775 F.2d 1551 (11th Cir.1985), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986). In *Flinn,* a former state representative brought suit against several individuals for actions connected with charges of sexual harassment which allegedly led to his electoral defeat upon re-election. The party moving to dismiss the charges against her in that case was a state representative who had sat as the chairperson of the house committee which

had investigated the harassment charges against the plaintiff. The case dealt most directly with whether the qualified immunity afforded this defendant in her capacity as a public official exempted her from defending the suit. However, one aspect of the case addressed whether the plaintiff had a constitutional right to continued employment as a state legislator. Noting that the plaintiff had not been removed from office during the term to which he had been elected, the court stated, "Although he certainly had a constitutional right to run for office and to hold office once elected, he had no constitutional right to win an election." *Id.* at 1554. Consequently, regardless of the issue of qualified immunity, the court stated, the plaintiff had "failed to allege any act for which he would be entitled to relief under § 1983." *Id.*

Thus, the Eleventh Circuit has resolved that the loss of an election cannot constitute the deprivation of a constitutional right. Such a loss, then, is insufficient to satisfy the *Paul* requirement that there be a denial of a constitutional right as a result of the bad-faith damage to an individual's reputation by a public official. Plaintiff, therefore, does not have a cause of action under § 1983 for actions related to his electoral loss.

### VI. Conclusion

The situations in which a federal court can issue injunctive relief against state action are limited when there is an on-going state proceeding, as there appears to be in this case with the state contempt proceeding. Even if there is not an on-going proceeding at the state level, Plaintiff's claims still fail to meet the requirements necessary for this Court to issue the injunctive relief sought.

Plaintiff alleges that Defendant (1) has initiated a bad-faith prosecution of Plaintiff either by establishing a perjury trap or by seeking his incarceration for refusing to testify in an official investigation; (2) has selectively enforced a rule against Plaintiff by seeking to have him held in contempt for refusing to testify in the investigation of the theft of his automobile; and (3) has interfered with Plaintiff's rights to seek and hold public office by manipulating the timing of the auto-theft investigation and making pub-

lic statements in the media—all in violation of Plaintiff's constitutional rights.

The charge of a bad-faith prosecution fails because a perjury-trap defense cannot be asserted until after the individual has testified and because federal courts are constrained in when they can issue injunctive relief from an order of contempt issued by a state court, at least when the plaintiff has had an opportunity to raise his federal constitutional claims in state court. The selective enforcement claim fails because Plaintiff has not adequately alleged that other individuals against whom the state did not proceed were truly similarly situated. And the final claim fails because even if the actions alleged by Plaintiff actually caused Plaintiff to lose the primary election, this would not give rise to a federal constitutional cause of action; one has a right to run for public office but not to win, and it has not been alleged that Defendant interfered with Plaintiff's attempt to run. Section 1983 does not convert into a federal cause of action every claim alleging wrongdoing by a state official. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Shillingford v. Holmes,* 634 F.2d 263 (5th Cir. Unit A Jan. 1981). In the instant situation, Plaintiff's proper recourse is to the state courts.

Accordingly, after a careful review of the record, and the Court being otherwise fully informed in the premises, it is

ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Dismiss be, and the same is hereby, GRANTED. This Complaint is dismissed with prejudice.

DONE and ORDERED.