**Jose MAYORAL–AMY, Plaintiff,**

v.

**BHI CORPORATION; Caribbean Consolidated Trading Ltd.; Michael A. Ashcroft; John M. Searle; Ralph H. Fonseca; and David Fonseca, Defendants.**

**No. 98–573 CIV–KING.**

United States District Court, S.D. Florida.

June 29, 1998.

Jose Mayoral–Amy, Lexington, KY, for Plaintiff.

Alan D. Danz, Weston, FL, for Defendant.

**ORDER DENYING DEFENDANTS' MO-TION TO DISMISS AND GRANTING PLAINTIFF ADDITIONAL TIME IN WHICH TO PERFECT SERVICE TO DEFENDANTS**

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendants BHI Corporation ("BHI"), Michael A. Ashcroft ("Ashcroft") and John M. Searle's ("Searle") Motion to Dismiss for Insufficiency of Service of Process, filed June 5, 1998. Defendants assert that Plaintiff failed to effectuate appropriate service of process as required by Rule 4 of the Federal Rules of Civil Procedure.

### Factual Summary

Plaintiff's pro se Complaint, filed March 12, 1998, brings suit in this Court pursuant to 28 U.S.C. § 1332. The Complaint is, at points, convoluted, and neglects to provide seemingly important pieces of information. Moreover, at at least one point, Plaintiff's exhibits directly contradict the facts as told in his pleadings. To the extent that a coherent picture of these facts may be derived, it may be summarized as follows:

Plaintiff is a citizen of the United States and a resident of Florida. Defendant BHI is a corporation incorporated under the laws of Belize, with principal offices in Belize and shares traded in the United States on NAS-DAQ. Defendants Searle, Ralph Fonseca and David Fonseca are citizens of Belize. Compl. at 2. Defendant Ashcroft claims to be a citizen of Belize, Def.'s Mot. at 4, although Plaintiff asserts that he is, in fact, a citizen of the United Kingdom. Compl. at 2. In June, 1994, Plaintiff was invited by Defendants Ashcroft and Ralph Fonseca to join a new venture of theirs ("CCTL") as a partner. Compl. ¶ 1. The Complaint alleges generally that CCTL, incorporated under the laws of Belize, was to be an import and export business between Latin America and the United States. *Id.* ¶ 3. Plaintiff was to assume marketing duties for CCTL. *Id.* ¶ 2. In exchange for these duties and his initial investment, he was granted a 15% share in the company and was promised $3,000.00 monthly in addition to any expenses he might incur towards the fulfilment of his responsibilities. *Id.* ¶¶ 2, 5. Defendants BHI and Ashcroft were to be responsible for all costs incurred by CCTL, and for all representations made on behalf of CCTL to potential creditors, suppliers and employees. *Id.* ¶¶ 4, 6.

The Complaint alleges that CCTL operated without problems for roughly a year, at which point Plaintiff was asked to relinquish his duties as the Director and stockholder of a yacht club ("Maya Landings") so that he might work for CCTL full-time. Compl. ¶¶ 7–8. The relationship of the Defendants to Maya Landings is unclear, although they apparently had some authority over the club, because Plaintiff claims that Defendant Ralph Fonseca replaced him as the club's Manager with Defendant David Fonseca, without Plaintiff's knowledge or consent. *Id.* ¶ 9. Plaintiff claims to have worked exclusively for CCTL for the next eighteen months, during which Defendants "engineered a Fraudulent Scheme [caps included] to cause the Financial Demise [caps included] of Maya Landings." *Id.* ¶ 11. Using Plaintiff's signature through their power of attorney, Defendants BHI, Ashcroft and the Fonsecas sold Maya Landings to Defendant Searle for a "*nominal*" amount. *Id.* ¶ 12 (emphasis included). Plaintiff claims that Defendants also failed to honor their commitments as per CCTL was concerned, failing to pay Plaintiff's salary and neglecting to reimburse him for his expenses. *Id.* ¶ 13. Finally, Plaintiff alleges that he was denied participation in CCTL as justified by his ownership

share. *Id.* ¶ 14. The Complaint seems to imply that CCTL was subsequently taken over by other companies, and that Plaintiff was denied participation or compensation by these companies as well. *Id.*

Plaintiff demands: $56,000.00 for unpaid salary and unreimbursed expenses; $700,-000.00 in compensatory damages for the losses he incurred as a result of the "Fraudulent Sale" [caps included] of Maya Landings; and $5,000,000.00 in punitive damages. Plaintiff mailed notice to Defendants on March 18, 1998, requesting that they waive service requirements. Pl.'s Resp. ¶ 1, Ex. A. Defendants uniformly ignored the notices, although Defendant BHI's bank did inform Plaintiff that it was not empowered as an agent for service of process for BHI. *Id.* ¶ 2, Ex. B. Plaintiff then faxed copies of his Complaint to Defendants, purportedly on the recommendation of the Consuls of Belize in Miami and Puerto Rico. *Id.* ¶ 3. The letter Plaintiff provides as proof of such instruction, however, indicates no such recommendation. Indeed, the letter (signed by William V. Burn, Consul of Belize in Miami) does not appear to be in reference to this case, this Plaintiff, or matters of service. Pl.'s Resp., Ex. C.

On June 9, 1998, Plaintiff claims to have received confirmation from Defendants' attorneys, acknowledging receipt of the complaint, and including copies of the Motion to Dismiss.

### Legal Standards

■ Dismissal is justified only when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 810, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980)). As noted above, for the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff in its pleadings are accepted as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Regardless of the alleged facts, how-

ever, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

■ While pleadings of a *pro se* litigant are construed liberally, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), "a pro se litigant must still meet minimal pleading standards." *Eidson v. Arenas,* 155 F.R.D. 215 (M.D.Fla. 1994). "Conclusory allegations and unwarranted deductions of fact also are not accepted as true." *Gersten v. Rundle,* 833 F.Supp. 906, 910 (S.D.Fla.1993) (King, J.) (citing *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974), *aff'd* 56 F.3d 1389 (11th Cir.1995)).

The question of service of process abroad is one of the most challenging that a district court can be called upon to face. This process "has been described as a ' . . . twisting process bordered on all sides with fatal pitfalls' and a 'tricky proposition.' " GARY B. BORN, INTERNATIONAL CIVIL LITIGATION IN U.S. COURTS 757 (3d ed.1996)(citing Horlick, *A Practical Guide to Service of United States Process Abroad,* 14 INT'L LAW. 637, 638 (1980) and *Chowaniec v. Heyl Truck Lines,* 1991 WL 111156, 1991 U.S. Dist. Lexis 8138 (N.D.Ill.1991)). Rule 4(f) of the Federal Rules of Civil Procedure governs service of process abroad on foreign defendants. That rule states, in part:

[S]ervice upon an individual from whom a waiver has not been obtained and filed . . . may be effected in a place not within a judicial district of the United States:

(1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

(A) in the manner prescribed by the law of the foreign country . . .

(B) as directed by the foreign authority in response to a letter rogatory or letter of request; or

(C) unless prohibited by the law of the foreign country, by

    (i) delivery to the individual personally of a copy of the summons and the complaint; or

    (ii) any form of mail requiring a signed receipt and dispatched by the clerk of court to the party to be served; or

(3) by other means not prohibited by international agreement as may be directed by the court.

F.R.Civ.P. 4(f). Rule 4(h) of the Federal Rules of Civil Procedure provides that service requirements for foreign corporations outside the United States is governed by Rule 4(f), with the sole exclusion of personal delivery as allowed by Rule 4(f)(2)(C)(I). F.R.Civ.P. 4(h).

### Discussion

In cases where service must be effected upon foreign nationals abroad, Rule 4(f) requires the use of an "internationally agreed means" of service, allowing otherwise only if there are no such means. F.R.Civ.P. 4(f)(2). The Supreme Court has held that the Hague Service Convention is the primary means of such service, and that "compliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk AG v. Schlunk,* 486 U.S. 694, 705, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988).[1] This Court has asserted that, "as a ratified treaty, the Hague Convention is of equal dignity with acts of Congress and enjoys the constitutional status of 'supreme Law of the Land.'" *ARCO Elec. Control Ltd. v. CORE Intl.,* 794 F.Supp. 1144, 1146 (S.D.Fla.1992). Belize's status, however, as a party to the Hague Service Convention is uncertain,[2] and it is not a signatory to other potentially relevant conventions such as the Inter–American Convention on Letters Rogatory. Given this, Rule 4(f)(2), governing circumstances where there is no internationally agreed means of service, is of particular interest here.[3] Complicating matters further, Rule 4(f)(3) allows this Court to authorize any particular method of service of its own choosing, so long as the order does not contradict any applicable international agreement.[4]

■ The very concept of service of process stems from the due process clauses of the Fifth and Fourteenth amendments to the U.S. Constitution. Due process demands "notice reasonably calculated under all the circumstances, to appraise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)(citing *Milliken v. Meyer,*

1. The Supreme Court has even speculated in dicta that "parties may resort to the Convention voluntarily, even in cases that fall outside the scope of its mandatory application." *Volkswagenwerk,* 486 U.S. at 706, 108 S.Ct. 2104.

2. Belize's predecessor in sovereignty, British Honduras, was a party to the Convention as a territory of the United Kingdom. Since achieving independence, Belize has not become a signatory. Whether or not this constitutes de facto acceptance or rejection of the Convention is uncertain. According to its Internet website, the U.S. State Department has requested the assistance of the Hague Convention on Private International Law in ascertaining whether or not Belize and other, similarly situated countries apply the rules of the Convention. U.S. State Department, *Hague Convention on the Service Abroad of Judicial and Extra–Judicial Documents in Civil and Commercial Matters* (visited June 25, 1998) <ht tp://travel.state.gov/hague_service.html$.

3. "Rule 4(f)(2) applies if service is to be made in a nation that is not a signatory to the Hague Service Convention. This is true of a substantial majority of foreign states." Born, *supra,* at 768.

4. It is important, not to mention interesting, to note that this does ·not necessarily preclude this Court from issuing such an order in contradiction to the law of a foreign state. While a district court is, without question, prohibited from issuing a 4(f)(3) order in violation of the principles of the Hague Service Convention, *Volkswagenwerk, supra,* the Advisory Committee notes imply that a court may order service in violation of foreign law. F.R.Civ.P. 4, 28 U.S.C.A., Advisory Committee Notes, at 115. *See also* Horn, *supra,* at 768. To wit: if Belize is not a party to the Hague Service Convention, it appears to be in the power of this Court to define a method of service by which the parties in Belize may be acceptably contacted, regardless of whether or not such method contravenes Belize's law.

311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The Supreme Court continued:

> The notice must be of such nature as reasonably to convey the required information … and it must afford a reasonable time for those interested to make their appearance … But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

*Mullane,* 339 U.S. at 314–315, 70 S.Ct. 652.

The purpose of service of process thus established, the question that remains is: What constitutes reasonable notice in these circumstances? Under U.S. law, that service of process via certain forms of mail satisfies due process requirements is well settled. *Travelers Health Ass'n. v. Virginia,* 339 U.S. 643, 650, 70 S.Ct. 927, 94 L.Ed. 1154 (1950)(citing *International Shoe Co. v. State of Washington,* 326 U.S. 310, 320–321, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The Hague Service Convention implies the same: it "does not interfere with … the freedom to send judicial documents, by postal channels, directly to persons abroad." Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Article 10(a). Some U.S. courts, however, have read Article 10(a) narrowly, and rejected it as grounds for the proposition that the Convention allows direct service by mail. *Ackermann v. Levine,* 788 F.2d 830 (2d Cir.1986). Certainly, the Convention clearly prefers service via a foreign State's specified Central Authority. Convention, Articles 2–7. According to the country's Miami Consulate, Belize does not consider facsimile transmission appropriate service of process. Telephone Interview with Miami Consulate of Belize (June 26, 1998). Generally, Belize demands that a foreign plaintiff engage the services of a Belizean attorney to effectuate service of process in Belize. *Id.* Alternatively, a request may be made by this Court to the Supreme Court of Belize, asking that a process server be appointed by that court for these purposes. Supreme Court of Judicature (Supreme Court Rules of Belize), Chapter 82, Order XII § 10(1)–(3).

■ Given these facts, independent of whether or not the Hague Service Convention is applied by Belize, it is apparent that Plaintiff did not properly serve process upon Defendants. This failure to follow the letter of defined procedure, however, obviously did not result in a corresponding failure to notify Defendants of these proceedings in actuality. While this Court will not exercise the authority seemingly granted to it by Rule 4(f)(3), which appears to allow us to unilaterally define an appropriate method for service in the absence of a clear international standard, that Plaintiff should have (after great efforts) succeeded in satisfying the purpose of service of process and yet still not be considered to have effectuated such service is cause for some unease.

This aside, while it may seem improbable that a pro se plaintiff will have the wherewithal to engage the services of a Belize attorney, this Plaintiff has (by his own admission, on the face of the pleadings) substantial contact and experience with Belize. Certainly, the letter which Plaintiff provides in which the Counsel of Belize for Puerto Rico refers to Plaintiff's sister as a "very dear friend of ours" implies that Plaintiff is not without contacts through which he may find himself a Belizean lawyer to serve process. Pl.'s Resp., Ex. C. At no point has Plaintiff claimed financial hardship of the sort that would preclude him from engaging the services of such an attorney.

■ It being clear that (under any possible set of circumstances) the appropriate mechanisms for service have not been followed, and this Court having been provided with no reason to believe that Plaintiff is incapable of appropriately effectuating such service, the Court will provide him with another sixty (60) days in which to perfect service.

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants BHI, Ashcroft and Searle's Motion to Dismiss for Insufficiency of Service of Process be, and the same is hereby, DENIED without prejudice. It is further

ORDERED and ADJUDGED that Plaintiff is hereby DIRECTED to properly effectuate service within the next sixty (60) days.