**In re YUKOS OIL COMPANY, Debtor.**

**Yukos Oil Company, Plaintiff,**

**v.**

**Russian Federation, et al., Defendants.**

**Bankruptcy No. 04–47742–H3–11.
Adversary No. 04–3952.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Dec. 16, 2004.

Robert Andrew Black, Jason Lee Boland, Johnathan Christiaan Bolton, Paul M. Botros, Zack A. Clement, Mark Allan Worden, Fulbright Jaworski LLP, Houston, TX, for Debtor.

### MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

The court has held a hearing on the "Plaintiff's Verified Emergency Motion for

Temporary Restraining Order and Preliminary Injunction" (Docket No. 2).

It appears from the evidence before the court that the series of events within Russia which has led to the notice of an auction of the principal producing assets of Yukos Oil Company ("Debtor") is inconsistent with the regular application of Russian law within Russia. The proceeding before this court is an injunctive proceeding, in which Debtor seeks, *inter alia,* to avert a sale on Sunday, December 19, 2004 of those assets. The harm to Debtor would be irreparable, and there is no evidence before the court that the harm to the seller would be significant; it is undisputed that the underlying assets, primarily oil and gas in the ground, cannot easily be alienated without the consent of the Russian government.

The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Temporary Restraining Order will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Jurisdiction

Yukos Oil Company ("Debtor") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on December 14, 2004. Debtor is an "open joint stock company" organized under the laws of the Russian Federation ("Russia"). Bruce K. Misamore, Debtor's chief financial officer, testified that a subsidiary of Debtor has approximately US$2 million in funds in an account at Southwest Bank of Texas, a bank located within the Southern District of Texas. In addition, Debtor has deposited approximately US$6 million to the trust account of its attorneys, Fulbright & Jaworski, L.L.P., as a retainer to be applied to the payment of legal fees and administrative expenses incurred in connection with this case. These funds represent Debtor's principal assets in the United States. Misamore additionally testified that approximately 15 percent of Debtor's shares are held by United States institutional investors.

Under 28 U.S.C. § 1334(a), the district courts have original and exclusive jurisdiction of a case under Title 11.

■ For a foreign corporation to qualify as a debtor under 11 U.S.C. § 109(a), courts have required that nominal amounts of property be located in the United States. The courts have noted that there is "virtually no formal barrier" to having federal courts adjudicate foreign debtors' bankruptcy proceedings. *In re Globo Comunicacoes E Participacoes S.A.,* 317 B.R. 235, 2004 WL 2624866, (S.D.N.Y. 2004), *citing In re Aerovias Nacionales de Colombia S.A. (In re Avianca),* 303 B.R. 1 (Bankr.S.D.N.Y.2003); *In re Global Ocean Carriers, Ltd.,* 251 B.R. 31 (Bankr.D.Del. 2000). Misamore testified that he for years has maintained a home in Houston, Texas, and has also resided in Moscow, Russia. He testified that he presently remains in the United States because he has been advised that he would be in danger of arrest if he were to return to Russia. The court concludes, based on the testimony of Misamore, that Debtor maintains significant assets in the Southern District of Texas, and that Debtor has standing to be a debtor under Chapter 11 of the Bankruptcy Code. The court finds the testimony of Misamore credible. The court concludes that the instant case was properly commenced. Thus, the court concludes that it has jurisdiction with respect to the instant Chapter 11 case. The court concludes that venue of the instant Chapter 11 case is proper, in light of the presence within the Southern District of Texas of

Debtor's principal assets located in the United States.

Under 28 U.S.C. § 1334(b), the district courts have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. Under 28 U.S.C. § 157(b)(1), bankruptcy judges may hear and determine all cases under Title 11, and all core proceedings arising under Title 11, or arising in a case under Title 11, referred to the bankruptcy judges. The United States District Court for the Southern District of Texas has entered a general order referring to the bankruptcy judges all bankruptcy cases and all proceedings arising under Title 11, or arising in or related to a case under Title 11. District Court General Order 2002–2.

■ In the instant adversary proceeding, Plaintiff (the Chapter 11 Debtor) seeks generally the entry of an injunction prohibiting Defendants from enforcing judgments obtained in the courts of Russia prepetition against property asserted by Plaintiff to be property of the bankruptcy estate. In the instant motion, Plaintiff seeks entry of a temporary restraining order and a preliminary injunction enjoining Defendants from conducting or participating in an auction sale of Debtor's interest in its subsidiary, Yuganskneftegas ("YNG"), which is presently scheduled to take place on Sunday, December 19, 2004.

The relief requested in the instant adversary proceeding and in the instant motion are core proceedings. *See* 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E), 157(b)(2)(K), and 157(b)(2)(O). The court concludes that it has jurisdiction to hear and determine the instant adversary proceeding, and the instant motion.

### Service and Notice

Plaintiff filed a certificate of service reflecting that notice of the hearing on the instant motion was served on Defendant Russia by facsimile through its Ministry of Justice, in Moscow, Russia, its Consul General, in Houston, Texas, and its Embassy to the United States, in Washington, D.C. The certificate of service reflects service by facsimile on Defendants Gazpromneft, Deutsche Bank AG, and J.P. Morgan Chase, through attorneys who appeared in court on December 15, 2004 on behalf of those entities. The certificate of service reflects service on the remaining Defendants through their chief legal officers. The certificate of service additionally reflects service on the United States Attorney General, the Texas Secretary of State, and the United States Department of State.

Service upon a foreign state shall be effected pursuant to 28 U.S.C. § 1608. Fed.R.Civ.P. 4(j), as made applicable by Fed. R. Bankr.P. 7004(a). That section provides in pertinent part:

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched

by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

The provisions for service under Section 1608 are hierarchical, such that a plaintiff must attempt the methods of service in the order they are addressed in the statute. *Magness v. Russian Federation,* 247 F.3d 609 (5th Cir.2001).

In the instant case, there is no evidence with respect to a special arrangement for service.

Under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, service on "contracting States" (entities which are parties to the Convention) may be made by "forwarding" the documents to a Central Authority designated by the government to receive requests for service coming from persons authorized to provide service under the law of the contracting State from which the documents originate.

Under Fed.R.Civ.P. 65(b), as made applicable by Fed. R. Bankr.P. 7065, a temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

A preliminary injunction requires at least five days' notice, and an opportunity to be heard. *Parker v. Ryan,* 960 F.2d 543 (5th Cir.1992).

■ Whether the submission of documents to a foreign government by facsimile is sufficient to provide notice of a preliminary injunction hearing is a question of first impression in this jurisdiction.

Due process demands "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

In the absence of designation by Russia's Central Authority pursuant to the Hague Convention to receive service by facsimile, facsimile transmission is not sufficient for service of process. *See Mayoral–Amy v. BHI Corp.,* 180 F.R.D. 456 (S.D.Fla.1998). The court concludes that, as to Defendant Russia, the requested temporary restraining order must proceed, if at all, under the standards applicable to granting of a temporary restraining order without notice.

With respect to Defendants Gazpromneft and Deutsche Bank AG, due process is satisfied where the parties have notice and an opportunity to be heard. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In the hearing on the instant request for temporary restraining order, Gazpromneft and Deutsche Bank AG appeared through counsel. Counsel for Defendant J.P. Morgan Chase has appeared in connection with the instant Chapter 11 case, but did not appear with respect to the instant request for temporary restraining order. The court concludes that those parties have sufficient notice with respect to the instant request for temporary restraining order.[1] With respect to the other Defendants named in the instant adversary proceeding, the rules applicable to entry of a temporary restraining order without notice apply.

### Standards Applicable to Requests for Temporary Restraining Order

Under 11 U.S.C. § 105(a), the court may issue any order that is necessary or appropriate to carry out the provisions of Title 11.

When determining whether to issue a temporary restraining order or preliminary injunction pursuant to 11 U.S.C. § 105(a), the bankruptcy court must consider the traditional inquiries which have a bearing on preliminary injunctions issued pursuant to Rule 65, Fed.R.Civ.P. *Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746 (5th Cir.1995).

The traditional prerequisites for issuance of a preliminary injunction are: (1) a substantial likelihood that the movant

will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest. *Zale Corp.,* 62 F.3d, at 764, *citing Commonwealth Life Ins. Co. v. Neal,* 669 F.2d 300 (5th Cir.1982).

### Likelihood of Plaintiff's Prevailing on the Merits

In the instant adversary proceeding, Plaintiff contends that agencies of the Russian government wrongfully assessed US$27.5 billion in taxes against it since 2000, after having audited and approved Plaintiff's taxes for those years. Plaintiff contends that the tax claims were assessed in violation of Russian law regarding taxation of Russian companies, as regularly applied in Russia. Plaintiff also contends that Russian agencies selectively and retroactively reinterpreted Russian law in a manner that could not have been anticipated when the transactions took place, and in a manner inconsistent with treatment of other taxpayers. Misamore testified that Plaintiff has appealed to a higher court the assessment of its taxes, and that the appeal remains pending. He testified that, despite the appeal, various governmental agencies in Russia have continued preparation for the auction of YNG on Sunday, December 19, 2004.

Plaintiff contends that various functionaries utilized a remedy improper under Russian law by freezing all of Plaintiff's assets, seizing Plaintiff's shares in its sub-

---

1. The court additionally notes that, because Gazpromneft and Deutsche Bank AG entered a general appearance at the hearing on the instant request for temporary restraining or- der, it appears substantially likely that Gazpromneft and Deutsche Bank AG are subject to the personal jurisdiction of this court.

sidiaries, and freezing the assets of the subsidiaries.

Plaintiff contends that Russia has waived its sovereign immunity (thus making it subject to this court's jurisdiction), and has consented to the submission of its tax dispute to arbitration, by its adoption of a law governing foreign investment which contains a provision for international arbitration.

Plaintiff contends that, in contravention of Russian law, Russian agencies have scheduled an auction of Plaintiff's stock in YNG, an entity from which Plaintiff derives approximately sixty percent of its oil and gas production, and has instructed Gazprom, an entity 40 percent owned by the Russian government, to make an initial bid of US$8.6 billion. Plaintiff contends that the value of Plaintiff's interest in YNG is in excess of US$15.8 billion.

Plaintiff's contentions with respect to the anticipated sale are supported by the evidence. Plaintiff's Exhibits 7 and 8 represent opinions of investment bankers Dresdner Kleinwort Wasserstein ("DrKW") and J.P. Morgan plc ("JPM") as to the value of YNG. DrKW opines that the value is between US$18.6 billion and US$21.1 billion, without consideration of the tax liabilities. If DrKW were to assume that tax liabilities would be judicially upheld, in DrKW's opinion, the range of values would decrease to between US$14.7 billion and US$17.3 billion. (Plaintiff's Exhibit 7). JPM opines that YNG has a fair range of enterprise value between US$19.0 billion and US$25.0 billion, and a fair range of equity value between US$16.1 billion and US$22.1 billion. (Plaintiff's Exhibit 8).[2]

The announcement for the auction contains provisions for the auction's terms. The terms announced include that the starting price is RuR246,753,447,303.18. The announcement further provides that, if no bidder bids after the first bid is announced, the stock will be sold to the first bidder, at the starting price. (Plaintiff's Exhibit 14). Misamore testified that, based on the current exchange rate between the Ruble and the Dollar, the resulting starting price, expressed in dollars, is approximately US$8.6 billion.

In the instant adversary proceeding, Plaintiff does not ask this court to determine that the tax assessments by Russian agencies are erroneous. Plaintiff seeks only determination that the remedy of seizure and sale of YNG is improper, and that Plaintiff is entitled to arbitration of the tax claims.

The weight of the evidence supports a finding that it is substantially likely that the assessments and manner of enforcement regarding Plaintiff's taxes were not conducted in accordance with Russian law. The court is mindful of the need for deference to the judicial determinations of another jurisdiction. This is important when the jurisdiction in question is that of a state of the United States; and of exceptional importance when it involves that of agencies of another sovereign state. However, in the instant case, the Plaintiff has made a showing that it needs a short additional time to hold its shareholder meeting scheduled for December 20, 2004, and may elect to file for bankruptcy under Russian law in order to proceed with a more orderly adjustment of its assets and debts in accordance with Russian law or to continue to seek international arbitration.[3]

---

**2.** The court makes no finding as to the actual value of the enterprise or stock of YNG. The court's consideration of the DrKW and JPM opinions is limited to a comparison of those reported values to the proposed beginning auction price.

**3.** The court makes no determination as to whether Plaintiff is entitled to arbitration, in-

The court concludes that Plaintiff has demonstrated a substantial likelihood of success on the merits, with respect to Defendants other than Russia.

With respect to Russia, the court finds that Plaintiff has presented insufficient evidence to support a finding that Russia has waived its sovereign immunity with respect to the instant adversary proceeding.

### Substantial Threat of Irreparable Injury

James Piers Gardner, an attorney representing Plaintiff with respect to the appeal of the underlying tax actions, testified that, on the date on which the taxes were assessed, the taxing authorities applied for *ex parte*, and received, an order from the Moscow Court of Arbitration to freeze all of Plaintiff's assets, and that this freezing of assets was done without allowing the thirty day period for appeal common under Russian law. He testified that Plaintiff's bank accounts remain subject to the freeze. In addition, three days before the appeal was to be heard, the tax authorities disclosed the materials upon which they relied to establish the tax liability. Gardner testified that tens of thousands of pages of documents were disclosed in the three days immediately prior to commencement of the appeal on June 18, 2004. He testified that Plaintiff was not permitted to fully present its first appeal, but rather was interrupted in the midst of arguing the appeal, and a ruling was delivered immediately for the tax authorities.

Gardner testified that Debtor had assets other than YNG from which to begin to satisfy the amount assessed by the tax authorities, as commonly permitted under Russian law. He testified that the authorities refused to consider other assets, and insisted on the sale of YNG. The court

found the testimony of Gardner to be extremely credible and competent.

The court finds that there is a substantial threat of injury to Plaintiff in the instant case. The evidence supports a finding of the likelihood that Plaintiff's shares of YNG will be sold for approximately half the value estimated by two different investment bankers. It has been argued that these same investment bankers are among those who propose to finance the purchase at auction. It additionally appears that sale of Plaintiff's primary asset would be irreversible.

### Balance of Harms

In the instant case, there is no evidence of harm to the parties against whom a temporary restraining order is sought, for a temporary delay in conduct of the sale. Thus, the overwhelming weight of harm, in losing its primary asset, rests upon Plaintiff in the instant case.

### Public Interest

The citizens of Russia, the United States, and elsewhere have a public interest in the ordinary progress of the rule of law. It is upon this foundation that the conduct of trade among nations, and among businesses based in these nations, rests. Participants in international commerce, in Russia, in the United States, and elsewhere, need to have an expectation that when they invest in foreign enterprises they may do so without fear that their investments may be the subject of confiscatory action by agencies of the foreign government. In the instant case, the appearance to Plaintiff, and its investors, of such a confiscation, is created by what appears, on the evidence before this court, to be the inconsistent application of Russian law within the Russian legal system.

ternational or otherwise.

**138**

The court concludes that the public interest will not be disserved by entry of a temporary restraining order.

### Conclusion

Based on the foregoing, the court concludes that a temporary restraining order should issue, enjoining sale of YNG, with respect to each of the named defendants except Russia.